**MARION MANUFACTURING COMPANY,**
Petitioner-Appellee,

v.

**W. B. LONG, d/b/a W. B. Long Company, and Robert Manning, Jr., d/b/a Webb Cotton Company, Respondents-Appellants.**

**No. 76–2347.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1978.

Decided Sept. 8, 1978.

On Motion for Clarification Dec. 12, 1978.

Theodore A. Snyder, Jr., Walhalla, S.C., J. Kimbrough Johnson, Memphis, Tenn., for respondents-appellants.

O. G. Calhoun, H. R. Stephenson, Jr., Greenville, S.C., John W. McQuiston, II, Goodman, Glazer, Strauch & Schneider, Memphis, Tenn., for petitioner-appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and KEITH, Circuit Judges.

KEITH, Circuit Judge.

Respondents below appeal from a judgment of the district court confirming and enforcing an arbitration award pursuant to 9 U.S.C. § 9 (1970). We affirm the judgment of Chief Judge Bailey Brown.

The underlying dispute concerns three contracts, numbered 100, 102 and 105, entered into between sellers-appellants W. B. Long, d/b/a W. B. Long Company, and Robert Manning, d/b/a Webb Cotton Company (hereinafter Long and Manning), and buyer-appellee Marion Manufacturing Company (hereinafter Marion), for the purchase and sale of cotton.[1] In an earlier proceeding between these parties, the United States District Court for the District of South Carolina held that the contracts were subject to the arbitration provisions of Rule 44 of the *Southern Mill Rules for Buying and Selling Cotton,* (1971 ed.). The Court ordered the parties to arbitrate their dispute pursuant to 9 U.S.C. §§ 1–3. *Long v. Marion Manufacturing Co.,* 402 F.Supp. 69

---

1. The facts of this case are set out in the opinion of the district court below. *Marion Manufacturing Co. v. W. B. Long,* No. C–76–127 (W.D.Tenn., August 11, 1976), slip opinion at 1–3. *See also Long v. Marion Manufacturing Co.,* 402 F.Supp. 69, 70 (D.S.C.1974), *aff'd,* 511 F.2d 1398 (4th Cir. 1975).

(D.S.C.1974), aff'd, 511 F.2d 1398 (4th Cir. 1975). Arbitration proceedings were held before the Board of Appeals of the Cotton States Arbitration Board in Memphis, Tennessee. The Board's decision is set out at the margin.[2]

After the Board's decision was announced on August 4, 1975, Marion petitioned the Board for a clarification of its decision to determine the amount of money damages. Long and Manning objected to a clarification of the award, contending that the award was clear that "Contracts 100, 102 and 105 are open contracts and that Sellers are required to ship enough cotton to complete each of them." Appendix at 78. On September 10, 1975, the Board of Appeals denied the request to clarify its award. Long and Manning then indicated to Marion their willingness to ship the cotton under the contract; Marion responded that delivery in accordance with the Southern Mill Rules was now impossible as the contracts had called for performance in 1974. Marion requested the sellers to forward to it the sum of $13,017.50, plus one-fourth cent per pound for 127 bales of cotton, in damages.

Long and Manning subsequently moved in the United States District Court for the District of South Carolina to confirm the arbitration award. The district court denied the motion, holding that absent an agreement between the parties, a judgment on an arbitration award may not be entered in a court other than the district court for the district in which the award was made.

W. B. Long v. Marion Manufacturing Co., No. 74–659 (D.S.C., March 10, 1976); 9 U.S.C. § 9. Marion then brought this action in the United States District Court for the western District of Tennessee for an order confirming, modifying, correcting or vacating the award. Long and Manning filed a cross-petition to confirm the award.

On August 11, 1976, Chief District Judge Bailey Brown entered an order confirming the arbitration award. The court ordered that all three contracts be completed with performance to be made within thirty days of the entry of judgment. Delivery and payment were to be made in accordance with the contract. The court also ordered Marion to pay Long and Manning the balance of $39,622.42 owing on an April, 1974, shipment of cotton. Enforcement of the judgment was stayed pending this appeal.

■ In reaching its decision, the district court stated in pertinent part:

In conformity with well-established legal precedent (See James Richardson & Sons v. Hedger Transportation Corp., 98 F.2d 55 (2nd Cir. 1938), cert. denied, 305 U.S. 657, 59 S.Ct. 357, 83 L.Ed. 426 (1939), this court has no intention of reviewing the merits of the arbitration award. However, the language of the above quoted award leaves the court somewhat puzzled. The word "fulfill" as defined by The American College Dictionary (1970 Edition) entails "carrying out" or "performing;" in short, specific performance, as

2. The decision of the Board of Appeals was as follows:

Appeal Board Case No. 110

This case has come to a head due to the failure of the Seller to deliver a certain number of bales against different Contracts the Seller had with the Buyer.

It is evident from the briefs that the Buyer and Seller realized the dangers that might occur in the nondelivery of the Contracts. Seller says his failure to deliver was due to an "Act of God" which statement could apparently be sustained but, in the opinion of this Board, such conditions do not apply to these Contracts.

The sales that were made were for a specific number of bales of a description that was readily available from the area involved. They

were not to come from certain farms and no matter what the Seller's intentions were, it was not so specified in the written Contract. Had the Contract so specified then the plea of an "Act of God" would have apparently been valid.

The Appeal Board, from its inception, has based its findings upon a literal interpretation of the written Contract. To deviate from this practice would bring about many questions as to what a Contract really meant.

This Board rules that the Seller should deliver the number of bales necessary to fulfill the Contracts in accord with Southern Mill rules.

/s/ BEN KYSER.
/s/ ALLISON H. PELL.

stated in legal terminology. Whereas, the ordering of specific performance is somewhat unusual in a contract of sale for a product like cotton, it is not for this court to question the decision of the arbitrators. *Raytheon Co. v. Rheem Manufacturing Co.,* 322 F.2d 173 (9th Cir. 1963).

Upon accepting the interpretation of the award as providing for specific performance, the refusal of the arbitrators to provide further clarification of the award becomes significant. The date on which the cotton is purchased for performance is immaterial; the essential criterion to be met is fulfillment of the contract. However, before such performance may be rendered one further issue must be resolved; that is, we must determine which contract should be credited with the disputed April 1974 delivery.

*Marion Manufacturing Co. v. W. B. Long,* No. C–76–127 (W.D.Tenn., August 11, 1976), slip opinion at 4. We agree with the court that specific performance of a contract for the purchase and sale of fungible goods is somewhat unusual, but we do not sit to review the merits of the arbitration award.[3]

The question presented on appeal is whether the rights and duties of the parties were fixed as of the date the contracts were breached, or the date of the arbitration award, August 4, 1975, or the date of the district court judgment, August 11, 1976. We hold that that part of the district court's judgment which orders the buyer to pay the seller the balance of $36,622.42 owed on the April, 1974, cotton shipment fixes the rights of the parties as of the date of the judgment. Although this issue was submitted to the arbitration panel in Long and Manning's statement of Issues on Arbitration, it was not ruled upon by the Board. The Judgment of the district court was the first adjudication of this claim between these parties. As such, it determined their rights as of the date it was entered.

The remaining portion of the district court's judgment confirmed and implemented the arbitration award. We hold that this part of the judgment fixed the rights of the parties as of the date of the award. An arbitration award conclusively determines the rights of the parties unless it is invalidated by a reviewing court. *Nix v. Spector Freight Systems, Inc.,* 264 F.2d 875 (3rd Cir. 1959). Thus, if the award is upheld in a reviewing court, the rights of the parties are determined from the date of the award and not the date of the court's judgment confirming the award. *See Lundgren v. Freeman,* 307 F.2d 104, 112 (9th Cir. 1962). Any other result would defeat the purpose of arbitration which is to finally decide the issues between the arbitrating parties without judicial intervention. *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805 (2nd Cir.), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960).

---

**3.** The district court noted that both parties came before it seeking money damages. Slip opinion at 6. However, these claims had been presented to the Board of Appeals and the Board "found no need" to award money damages. *Id.* The court found that the Board's decision requiring specific performance of the contract might be the more equitable result in light of the fact that "both parties abused the fair standards of commercial dealing in spirit, if not in fact." Slip opinion at 6. The court, therefore, declined to amend the award to provide for money damages instead of specific performance. Our review of the record leads us to agree with the district court that these parties have abused the fair standards of commercial dealing. The numerous judicial proceedings in this matter result from the parties'

unwillingness to deliver or to accept delivery under the contracts except when fluctuations in the market price of cotton make such delivery, or such acceptance, economically attractive to the sellers or buyer, respectively, without regard to the requirements of the contracts. However, even if the result reached by the arbitration panel was not "equitable" it must be upheld by the courts unless clearly erroneous. *See* 9 U.S.C. §§ 10, 11 (1970). The federal courts do not sit to review the arbitrator's award *de novo,* or to instruct the arbitrator in the computation of damages. *Orion Shipping and Trading Co. v. Eastern States Petroleum Corp.,* 206 F.Supp. 777 (S.D.N.Y.1962), *aff'd,* 312 F.2d 299 (2nd Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).

It should be the rule, rather than the exception, that when arbitrators hand down an award the parties will comply with it, without the necessity of court proceedings, just as it is (or should be) the normal or usual result that parties comply with a judgment, without the necessity of resort to process or appeal.

*Lundgren v. Freeman,* 307 F.2d at 112.

■ An arbitration award which comes within the purview of 9 U.S.C. §§ 1 *et seq.* (1970), will only be vacated or set aside if fraud, misconduct or partiality is shown, or if the arbitrator has exceeded his authority, or if the award is not mutual, final and definite. 9 U.S.C. § 10; *Aerojet-General Corp. v. American Arbitration Ass'n.,* 478 F.2d 248 (9th Cir. 1973). These circumstances are not present in the instant case.

The judgment of the district court is affirmed.

### On Motion for Clarification and in the Alternative, Petition for Rehearing

■ The basic difficulty in this unduly protracted litigation is the arbitration panel's award of "specific performance" of a contract involving the sale of fungible goods. Both parties have realized that "specific performance" of the sale of a fungible good or product is nothing more than an unusual way of fixing money damages. In a case such as this, involving cotton, "specific performance" on a given day merely means that the seller will ship the cotton and receive the contract price. The buyer, in turn, can either use the cotton or resell it on the open market. Where, as here, the product or good in question is not unique and no shortage exists;[1] there is no difference between an award of "specific performance" and an award of the difference between the market price and the contract price, which is the normal measure of damages under U.C.C. § 2–713.

Although our opinion, correctly we think, indicates that an arbitration award should fix the rights of the parties as of the date of the award; the arbitration panel's strange award of "specific performance" has caused some confusion.

■ We think it clear that our opinion mandates that the rights and obligations of the parties must be set as of August 4, 1975, the date of the arbitration award. In other words, a court's judgment confirming an arbitration award must reflect what would have happened had the parties immediately complied with the award instead of going to court. It appears that Judge Brown's decision[2] did not fix the rights of the parties as of August 4, 1975, but did so as of the date of his judgment, entered on August 11, 1976.[3] We therefore grant the motion for clarification and remand this case with directions that an appropriate judgment be entered reflecting the obligations of the parties had performance been consummated on August 4, 1975, the date of the arbitration award.

---

1. Indeed, the buyer here "covered" by buying cotton on the open market.

2. We note that Judge Brown did not vacate the award (9 U.S.C. § 10), nor modify it (9 U.S.C. § 11), but confirmed it.

3. Both parties recognized that "specific performance" and money damages are identical in this case. One simply picks the date when performance is to take place, ascertains the price of cotton on that date, and converts the "specific performance" award into dollars. Thus, by ordering "specific performance" to take place in August of 1976, the court set the rights of the parties as of that date.