Joseph **JENKINS** and Stanley Hodges, Plaintiffs–Appellants & Cross–Appellees,

v.

**PRUDENTIAL–BACHE SECURITIES, INC.,** Defendant–Appellee & Cross–Appellant.

Nos. 86–1414, 86–1473.

United States Court of Appeals, Tenth Circuit.

May 23, 1988.

Rehearing Denied July 1, 1988.

Thomas M. Knepper, Law Offices of Neal, Gerber & Eisenberg, Chicago, Ill., for plaintiffs-appellants & cross-appellees.

Spencer E. Austin, Parsons, Behle & Latimer, Salt Lake City, Utah, for defendant-appellee & cross-appellant.

Before McKAY and BALDOCK, Circuit Judges, and SAFFELS, District Judge [*].

SAFFELS, District Judge.

Plaintiffs Joseph Jenkins and Stanley Hodges appeal from a district court order affirming an arbitration decision of the New York Stock Exchange, Inc. Plaintiffs' grievance stems from defendant Prudential–Bache Securities, Inc.'s decision to close its Provo, Utah branch office at which plaintiffs were employed. Plaintiffs were given the opportunity of relocating to Prudential–Bache's Salt Lake City office but preferred to accept employment with another investment firm and sought compensation from Prudential–Bache for breach of their employment contracts. The arbitration panel found in favor of Prudential–Bache, and the district court upheld the award and denied Prudential–Bache's motion for sanctions. Under the narrow standards for review of an arbitration award, we find no basis for plaintiffs' allegation of error. We therefore affirm the award and likewise deny sanctions.

## I.

In November 1983, Joseph Jenkins and Stanley Hodges each signed two agreements with Prudential–Bache: an employment agreement and a promissory note. Pursuant to the employment agreements, Jenkins and Hodges were hired as Account Executives at the new Prudential–Bache office located in Provo. A bonus provision in the employment agreement interfaced with the promissory note as follows. Plaintiffs were to be given a bonus of approximately $60,000.00 to be paid in yearly installments over the four-year term of employment. At the same time, Prudential–Bache "loaned" plaintiffs $60,000.00 as memorialized by the security agreement. Prudential–Bache reserved the right to apply the bonus payments to the outstanding loan amount. In essence, plaintiffs each received an approximately $60,000.00 forgivable loan. The outstanding loan amount was to become immediately due and payable upon certain events, including termination of employment. The employment agreement also had an arbitration provision.

The Provo branch office was not profitable, and on March 27, 1984, Prudential–Bache notified plaintiffs that it would close the facility. Prudential–Bache offered the plaintiffs similar positions in its Salt Lake

* Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

City office some thirty miles away. Plaintiffs determined that they could not or would not accept such employment. The record indicates that plaintiff Jenkins suffered from multiple sclerosis, was bound to a wheelchair, and could not have easily commuted from Provo, where he preferred to maintain his residence. In addition, Jenkins and Hodges had a partner relationship and were determined to stay together. Without notifying Prudential–Bache, plaintiffs accepted employment with Shearson Lehman/American Express in Provo beginning April 2, 1984.

Prudential–Bache subsequently demanded repayment of the loans, which the plaintiffs refused. On August 6, 1984, Prudential–Bache filed formal statements of claim for arbitration against plaintiffs with the New York Stock Exchange, Inc. A three-member panel held a hearing in Salt Lake City, Utah on March 20, 1985, and on that same day issued its decision, without analysis, awarding Prudential–Bache recovery of the loaned amounts.

Plaintiffs filed a complaint to vacate the award in the United States District Court for the District of Utah. The district court rejected plaintiffs' argument that no evidence existed to support plaintiffs' having voluntarily terminated the employment agreement. Because the district court found ample support for the award, the arbitrators' decision was upheld. This timely appeal followed.

On appeal, Jenkins and Hodges argue that the arbitration record contained *no* evidence which rationally supports the award; therefore, the district court's confirmation of the arbitrators' decision was erroneous. In making this argument, Jenkins and Hodges assume that "fundamental irrationality" (or its functional equivalent) is an implied basis for vacating an arbitration award under section 10 of the Federal Arbitration Act, 9 U.S.C. § 10 (1982). Plaintiffs boldly assert that if *any* evidence can be pinpointed in support of the arbitration panel's and district court's decisions, their appeal should be denied. Plaintiffs view the evidence as establishing only one possible finding: Prudential–

Bache breached the contract by closing the Provo office. By closing the office, Prudential–Bache allegedly violated the clause that referred to plaintiffs as "Account Executives at the Prudential–Bache office located in Provo," which plaintiffs interpret as meaning "Provo and only Provo." They argue that any events occurring after this breach are irrelevant, including their decision to decline Prudential–Bache's offer of employment in the Salt Lake City office.

## II.

In a statute unamended since its original enactment in 1947, Congress enumerated certain instances in which federal courts may review an arbitration award:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

9 U.S.C. § 10 (1982). However, federal courts have never limited their scope of review to a strict reading of this statute. Viewed either as an inherent appurtenance to the right of judicial review or as a broad interpretation of subsection (d) prohibiting

arbitrators from exceeding their powers, the arbitration award has traditionally been subjected to a sort of "abuse of discretion" standard.

One alternative method of limitation began with the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that opinion, the Court held that under section 10 of the Federal Arbitration Act, "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." *Id.* at 436–37, 74 S.Ct. at 187–88. The Second Circuit recently had the occasion to discuss this standard. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986), the court stated:

" 'Manifest disregard of the law' by arbitrators is a judicially-created ground for vacating their arbitration award.... It is not to be found in the federal arbitration act. 9 U.S.C. § 10. Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law."

808 F.2d at 933. *See also French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir.1986). The "manifest disregard" standard was most recently mentioned in *Shearson/American Express, Inc. v. McMahon*, — U.S. —, —, 107 S.Ct. 2332, 2340, 96 L.Ed.2d 185, 197 (1987). Although the *McMahon* Court questioned the continued validity of the *Wilko* opinion's general mistrust of the arbitral process, *id.* at —, 107 S.Ct. at 2339–42, 96 L.Ed.2d at 196–99, the Court did not have the occasion to undermine *Wilko*'s statement concerning the limited judicial review of arbitration awards. *See also id.* at —, 107 S.Ct. at 2355, 96 L.Ed.2d at 215 (Blackmun, J., dissenting in part) ("Judicial review is still substantially limited to the four grounds listed in § 10 of the Arbitration Act and to the concept of 'manifest disregard' of the law.").

While the "manifest disregard" analysis deals mainly with willful unattentiveness to the governing law, several other terms of art have been employed to ensure that the arbitrator's decision relies on his interpretation of the contract as contrasted with his own beliefs of fairness and justice. Some courts state that the arbitrator's decision must have a rational basis. *E.g., French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir.1986) ("An arbitrator's decision must be upheld unless it is 'completely irrational'....") (quoting *Swift Indus. v. Botany Indus.*, 466 F.2d 1125, 1131 (3d Cir.1972)). *See also Industrial Mut. Ass'n, Inc. v. Amalgamated Workers*, 725 F.2d 406, 412 (6th Cir.1984); *Ehrich v. A.G. Edwards & Sons, Inc.*, 675 F.Supp. 559, 565 (D.S.D.1987); *United Inter–Mountain Tele. Co. v. Communications Workers of America*, 662 F.Supp. 82, 83 (E.D.Tenn.1987). The more common phraseology derives from the Supreme Court's decision in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424 (1960). In reviewing an arbitrator's interpretation of a collective bargaining agreement, the Court stated:

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."

*Id.* at 597, 80 S.Ct. at 1361. Although *Enterprise Wheel* involved a dispute governed by the labor acts, the "essence of the contract" analysis applies equally to judicial review under 9 U.S.C. § 10. *See Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 1984 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986).

We have previously adopted the *Enterprise Wheel* analysis. In *Sterling Colo. Beef Co. v. United Food and Commercial Workers*, 767 F.2d 718 (10th Cir.1985), we stated that "the role of the courts in reviewing arbitral awards is limited to the determination of whether the arbitrator's award 'draws its essence from the contract

of the parties.'" *Id.* at 720 (paraphrasing *Enterprise Wheel*). We also noted:

"The arbitrator's award is not open to review on the merits. 'The merits embrace not only asserted errors in determining the credibility of witnesses, the weight to be given their testimony, and the determination of factual issues, but also the construction and application of the collective bargaining agreement.' *Amalgamated Butcher Workmen v. Capitol Packing Co.,* 413 F.2d 668, 672 (10th Cir.1969). As the Supreme Court has stated, 'it is the arbitrator's construction which is bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' *Enterprise Corp.,* 363 U.S. at 599 [80 S.Ct. at 1362].... The Court thus will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation."

767 F.2d at 720 (citations omitted).

Most recently, the Supreme Court reaffirmed the limited scrutiny of an arbitration award. The Court's reasoning bears repeating here:

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of [an agreement], an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract, but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... But as

long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."

*United Paperworkers Int'l Union v. Misco, Inc.,* — U.S. —, —, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286, 298–99 (1987).

Plaintiffs focus exclusively on their argument that closure of the Provo office was a breach of the employment agreement. Therefore, in light of the prevailing law discussed above, the sole question for our consideration is whether the arbitration panel ignored the plain language of the contract in refusing plaintiffs' interpretation of the agreement, *i.e.,* can we state with positive assurance that the contract is not susceptible to an interpretation contrary to plaintiffs'? The answer is that we cannot so state. The plain language of the contract does not *require* Prudential–Bache to keep plaintiffs employed *only in Provo.* The contract also does not include a stipulation that Prudential–Bache would keep the Provo office open regardless of what might occur. This was a brand new office in a small city in Utah. Plaintiffs were experienced in the stock brokerage profession and must have known of the potential risks in starting up such an office. It is not beyond reason that the arbitrators concluded in such circumstances, absent a specific contractual provision, the parties contemplated the possibility of employment elsewhere if the Provo office was a bust. Plaintiffs present good arguments why Prudential–Bache should have known plaintiffs would not be interested in another location, arguments with which we might even agree in another setting. But this is a review of an arbitration award. Plaintiffs agreed to have an arbitration panel interpret their contracts. Even if the panel misread the contract, we may not reverse for that reason alone. The court cannot say that the panel ignored the plain language of the contract, and the district court's decision must therefore be affirmed.

The final matter is Prudential–Bache's cross-appeal for sanctions. It requests sanctions under Rule 11 of the Federal Rules of Civil Procedure against plaintiffs for filing a frivolous appeal. Because the grounds asserted by plaintiffs on appeal were colorable, sanctions are not appropriate, and the request is denied.

The district court's order is AFFIRMED.