B.F. KELLEY, Jr., individually and as Trustee under the Will of Ben F. Kelley, deceased, and Mildred L. Kelley, Plaintiff,

v.

William B. MICHAELS and PaineWebber, Inc., and Liberty Bank & Trust Company of Tulsa, N.A., in its capacity as Trustee of the Trust of Allene H. Michaels, deceased, Defendants.

No. 92-C-1004-E.

United States District Court, N.D. Oklahoma.

April 30, 1993.

James M. Sturdivant, Timothy A. Carney, Gable & Gotwals, Tulsa, OK, for plaintiffs.

John E. Dowdell, Joel Wohlgemuth, William O'Connor, Norman & Wohlgemuth, Tulsa, OK, Ed Werner, PaineWebber Inc., Welhawken, NY, for William Michaels.

John T. Schmidt, Conner & Winters, Tulsa, OK, Ed Werner, PaineWebber, Inc., Welhawken, NY, for PaineWebber, Inc.

R. Richard Love, III, George H. Lowrey, Conner & Winters, Tulsa, OK, for Liberty Bank & Trust Co. of Tulsa, N.A.

## ORDER

ELLISON, Chief Judge.

This matter comes before the Court for consideration upon Defendant's Motion for Partial Summary Judgment (# 7) on the issue of punitive damages awarded by an arbitration board and Motion to Vacate (# 6), and Plaintiffs' Cross–Motion for Summary Judgment (# 16) for confirmation of the arbitration award.

The following facts are not in dispute. Defendant, William B. Michaels ("Michaels"), as a broker for PaineWebber, Inc. ("Paine-Webber") managed Plaintiffs', B.F. and Mildred Kelley ("the Kelleys"), joint trust accounts. The Kelleys, both age 76, held the joint account, and Mr. Kelley was sole trustee for the trust account naming his mother, age 102, as the beneficiary. Plaintiffs assert that they invested their money intending to live on the interest income.

Plaintiffs claim Michaels liquidated a portion of their accounts and churned [1] the funds by trading in speculative securities without Plaintiffs' knowledge or consent. Plaintiffs contend PaineWebber fired Michaels in September 1989, and subsequently Michaels was hired by Merrill Lynch as a broker. To move Plaintiffs' accounts to Merrill Lynch, Michaels liquified the accounts incurring an "exit" expense of $14,257.40. Plaintiffs claim they were unaware that PaineWebber fired Michaels or that they would be charged exit fees. Further, Plaintiffs claim that during Michaels' employment with Merrill Lynch, he again churned their accounts without their knowledge or consent.

After discovering Michaels' actions, Plaintiffs brought suit against Michaels in Oklahoma state court; however, the action was dismissed and the issues were submitted to arbitration as specified in both account agreements. Arbitration proceeded under the National Association of Security Dealers', Inc. ("NASD") Code of Arbitration Procedure. Both agreements contained choice-of-law provisions calling for the application of New York substantive law for the purposes of this dispute.

## SCOPE OF REVIEW

■ First, it is crucial to decide whether arbitration decisions and awards are subject to judicial review. The Federal Arbitration Act ("FAA") governs any "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C.A. § 2 (1988). In view of the commercial investments made here, there is no question that this is a situation involving interstate commerce. The FAA enumerates certain instances in which federal courts may review an arbitration award:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ...
>
> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.A. § 10 (1988).

An arbitration award may be modified or corrected:

> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. 9 U.S.C.A. § 11(b) (1988).

The 10th Circuit Court of Appeals, in *Jenkins v. Prudential–Bache Sec., Inc.*, 847 F.2d 631 (10th Cir.1988) set out the scope of review for arbitration awards: "The role of the courts in reviewing arbitral awards is limited to the determination of whether the arbitrator's award draws its essence from the contract of the parties." *Id.* at 635 (citation omitted). The *Jenkins* standard is supported by *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), where the Supreme Court recognized that parties contracting to have disputes resolved through arbitration rather than by a judge agree to abide by the

---

1. Churning occurs when a broker, exercising control over the volume and frequency of trades, abuses his customer's confidence for personal gain by initiating transactions that are excessive in view of the character of the account and the customer's objectives as expressed to the broker. Black's Law Dictionary 220 (5th ed. 1979).

arbitrator's view of the facts and of the meaning of the contract they agreed to accept. "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id.* at 635.

In following the scope of review set forth above, it is appropriate for this Court to look to the contents of the parties' agreements. If it is possible that reasonable minds might differ on the meaning of the agreement, judicial review is inappropriate because the arbitration board could have decided either way. However, if the contract is clear on its face, the Court may review a contrary decision for abuse of discretion.

## PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES:

At arbitration Plaintiffs requested: actual damages of $30,000.00, interest as allowed by law, punitive damages, legal fees, and costs against PaineWebber and Michaels. Plaintiffs also requested portfolio losses of $220,000.00 for damages from Merrill Lynch, and lost opportunity damages of $75,725.00.

The arbitration panel found Michaels liable for actual damages in the amount of $292,750.00. This amount represents portfolio losses of $220,000.00 sustained by the Plaintiffs' accounts during the time they were churned by Michaels as an employee of Merrill Lynch, plus lost opportunity damages of $72,750.00. Plaintiffs received $290,000.00 in settlement proceeds from Merrill Lynch, and the arbitration panel set off the award against Michaels by the amount of settlement. Thus, Michaels was liable for the remaining $2750.00. In addition, the Board awarded Plaintiffs $505,217.50 in punitive damages against Michaels.

Michaels contends that the Kelleys did not request punitive damages against Michaels for his activities while he was an employee of Merrill Lynch. Because Merrill Lynch reached a settlement agreement with Plaintiffs before the arbitration hearing, it is reasonable that Plaintiffs did not seek costs, interest, legal fees, or punitive damages from Merrill Lynch.

Furthermore, the arbitration board could have interpreted the request for punitive damages to cover all alleged wrongdoing of Michaels no matter where he was employed. The arbitration board does not indicate whether the punitive damages awarded were for Michaels' conduct at PaineWebber, Merrill Lynch or both. Thus, this Court will not question or review further the validity of Plaintiff's request for punitive damages, except to determine whether there is any provision of applicable law that could be interpreted by the arbitration board as allowing them to award punitive damages as requested.

## AUTHORITY OF ARBITRATION PANEL TO AWARD PUNITIVE DAMAGES:

Commercial arbitration cases have taken three different approaches to the punitive damages question: 1) some courts hold that arbitrators can never award punitive damages, based upon the theory that punitive damages are sanctions reserved to the State alone (New York takes this approach); 2) other courts hold that punitive damages can only be awarded if the parties' arbitration agreement expressly allows punitive damages; 3) still other courts hold that the incorporation of select arbitration rules (like NASD) into the arbitration agreement along with the FAA, permits arbitration panels to award punitive damages.

Plaintiffs argue that the arbitration board could have reached several different conclusions about the law applicable to the Kelleys' punitive damages claim, one of which is that Federal law (the Federal Arbitration Act) governs Plaintiffs' request for punitive damages. Under the FAA, arbitration boards may award punitive damages. *See Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6 (1st Cir.1989); *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378 (11th Cir.1988); *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056 (9th Cir. 1991).

Despite the applicability of the FAA to this interstate commerce case, Michaels argues that the choice-of-law provisions in the parties' contracts preclude application of the FAA. Under New York arbitration law, arbitration panels lack the authority to award punitive damages.

580

Until recently, no court in the Tenth Circuit had addressed the issue of punitive damages awards in commercial arbitration cases. The United States District Court, District of Colorado confirmed an arbitration award under circumstances similar to the instant case. In *Pyle v. Securities U.S.A., Inc.*, 758 F.Supp. 638 (D.Colo.1991), one party sought confirmation of a commercial arbitration award for both actual and punitive damages, while the other party contested the punitive damages portion of the award. The court upheld the Board's authority to award punitive damages, noting that the parties' agreement to follow the NASD Code of Arbitration and the broad application of the FAA gave the arbitration board authority to grant punitive damages.

In *Pyle*, the court held "that absent an agreement by the parties that state arbitration law should govern, state arbitration law restricting an arbitrator's power to award punitive damages does not apply to an action under the FAA." *Id.* at 639. Like the parties in *Pyle*, the parties in the instant matter incorporated the NASD Code of Arbitration Procedure into their agreement. The NASD Arbitration Code contains a broad provision for relief: "[t]he parties agreed to arbitrate 'any dispute, claim or controversy arising out of or in connection with the business of any member of the Association.'" 758 F.Supp. at 640 (citing NASD Code § 1). In *Pyle*, the court held that "any dispute, claim or controversy" includes a claim for punitive damages. Thus, the expansive view of an arbiters' power to decide disputes, coupled with the incorporation of the NASD Code of Arbitration Rules in the parties' agreement, provides the arbitration panel with the authority to award punitive damages.

Michaels' argument that the New York choice-of-law provision requires the arbitration board to apply New York arbitration rules is ineffective in light of the *Pyle* holding. The parties specifically contracted to apply the NASD Code of Arbitration, and not New York arbitration law, for procedural matters. It is plausible that this was the conclusion of the arbitration board, as well.

APPROPRIATENESS OF PUNITIVE DAMAGES AWARD:

While the incorporation of NASD rules and the FAA gives the arbitration panel the authority to award punitive damages, New York substantive law must be applied to determine whether punitive damages are appropriate given the facts of this case. Thus, if a New York court would be able to award punitive damages under similar circumstance, then the arbitration board has the power. 943 F.2d 1056. Under New York law "punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him as well as others who might otherwise be so prompted, from indulging in similar conduct in the future." *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 489, 179 N.E.2d 497, 498 (1961). In this case the arbitration board not only awarded punitive damages against Michaels, but also recommended that the NASD review Michaels' conduct to determine whether disciplinary action was warranted. From this request for disciplinary review it is reasonable to conclude that the Board awarded punitive damages against Michaels for reasons within the requirements of New York substantive law on punitive damages.

CONCLUSION

Courts have limited powers to review arbitration awards, and must defer to the arbiters' interpretation of ambiguous terms in the arbitration agreement. The award of punitive damages herein disputed was made pursuant to a reasonable interpretation of the parties' arbitration agreement. Therefore, Plaintiffs' Motion for Summary Judgment (# 16) is hereby GRANTED, and Defendants' Motion for Partial Summary Judgment (# 7) and Motion to Vacate (# 6) are DENIED.

ORDERED.