Harv L. JEPPSEN, Plaintiff/Claimant,

v.

PIPER, JAFFRAY & HOPWOOD, INCORPORATED, E.F. Hutton & Company, Inc., and George A. Barker, Defendants/Respondents.

No. 88–C–0297–S.

United States District Court,
D. Utah,
Central Division.

March 6, 1995.

David W. Scofield, Parsons Davies Kinghorn & Peters, David R. Wright, Workman Nydegger & Seeley, Salt Lake City, UT, Matthew G. Cooper, Murray, UT, Adam M. Duncan, Callister Nebeker & McCullough, Salt Lake City, UT, for plaintiff.

Blake D. Miller, Suitter, Axland & Hanson, Larry G. Reed, Crowther & Reed, Kenneth W. Yeates, Donald L. Dalton, Van Cott, Bagley, Cornwall & McCarthy, Barbara K. Polich, Elizabeth S. Whitney, Parsons, Behle & Latimer, Jay D. Gurmankin, Jay D. Gurmankin, PC, Randall A. Mackey, Gregory N. Jones, Gifford W. Price, Mackey Price & Williams, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION

SAM, District Judge.

The court has before it plaintiff/claimant's Motion for an Order Confirming Arbitration Award, For Entry of Judgment and For Award of Costs, Including Attorneys' Fees ("Motion to Confirm") and defendants/respondents' Motion to Vacate, Modify or Correct Arbitration Award ("Motion to Vacate"). For the reasons discussed hereafter, the court grants the motion to confirm and denies the motion to vacate.[1]

### I. INTRODUCTION

Plaintiff/claimant Harv L. Jeppsen ("Jeppsen") opened a stock brokerage account at Piper, Jaffray & Hopwood ("Piper") in December of 1986. On March 5, 1988, Jeppsen filed a complaint with this court against Piper, E.F. Hutton & Company, Inc.

---

1. During the course of the court's consideration of this matter, the court has received from counsel citations to supplemental authority in support of their various claims and legal theories. The last such submission was received by the court on January 13, 1995. The court, in making its decision, has given careful consideration to all cases cited.

("Hutton"),[2] Jeppsen's former brokerage firm, and George A. Barker, ("Barker") Jeppsen's former broker at Hutton and Piper. Respondent Don L. Larkin ("Larkin"), branch manager of Piper's Salt Lake City office, was not named as a party to the action. The complaint alleged that there was unauthorized discretionary trading or churning in Jeppsen's account.

Defendants subsequently moved to stay proceedings pending arbitration and to compel arbitration. On December 26, 1989, the court ordered the action stayed pending arbitration.[3] Plaintiff filed his Statement of Claim with the National Association of Securities Dealers ("NASD") on March 17, 1993, submitting his claims against defendants Piper and Barker, as well as respondent Larkin. Defendants and respondent Larkin executed their submission agreements with NASD on May 26, 1993. A five day arbitration hearing was held before a panel of three arbitrators on November 16, 17, 18, 19 and 22, 1993 in Salt Lake City, Utah. On January 20, 1994, the arbitration panel issued its arbitration award from which the present motions arise. The award includes damages of $603,000 and attorneys' fees and costs of $388,541.55 against Piper, Barker and Larkin jointly and severally, and $250,000 in punitive damages against Larkin and Barker separately and individually.

Jeppsen by his motion seeks the court's order confirming the arbitration award. Defendants/respondents[4] by their motions seek the court's order vacating, modifying or correcting the arbitration award.

## II. STANDARD OF REVIEW

"If a court is to disturb an [arbitration] award, it can only do so under the strict statutory or judicially-created standards. The Federal Arbitration Act, 9 U.S.C. § 10 (1990), provides the statutory grounds upon which a court may vacate an arbitrator's award." *Seymour v. Blue Cross/Blue Shield,* 988 F.2d 1020, 1023 (10th Cir.1993). Section 10 of the Federal Arbitration Act ("FAA") provides that an arbitration award may be vacated, for among other things, "[w]here the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d). Section 11 of the FAA provides that an arbitration award can be modified or corrected, for among other things, "(a) Where there was an evident material miscalculation of figures...." 9 U.S.C. § 11(a).

A court must give great deference to the arbitrator's award.

[M]aximum deference is owed to the arbitrator's decision. In fact, the standard of review of arbitral awards "is among the narrowest known to the law." *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7,* 886 F.2d 275, 276 (10th Cir.1989).

> Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited.

*Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986) (citations omitted).

An arbitrator's erroneous interpretations or applications of law are not reversible. *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Only "manifest disregard" of the law is subject to reversal. *Id.* This Court has characterized the "manifest disregard" standard as "willful inattentiveness to the governing law." *Jenkins v. Prudential–Bache Sec. Inc.,* 847 F.2d 631, 634 (10th Cir.1988). Manifest disregard of the law "clearly means more than error or misunderstanding with respect to the law." *Merrill*

**2.** Jeppsen settled his claims asserted against Hutton by agreement dated December 11, 1991.

**3.** Jeppsen appealed the court's order referring his claims to arbitration. The appeal was dismissed by the United States Court of Appeals for the Tenth Circuit on August 1, 1990.

**4.** Any reference to respondents hereafter shall refer to Piper, Barker and Larkin collectively.

*Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455 (10th Cir.1995).

■ In addition to the foregoing standards, a judicially created public policy exception has been recognized that permits a court, for certain public policy reasons, to decline to enforce an arbitrator's award.

A judicially-created doctrine, the public policy exception provides an additional basis for reversing an arbitration award where the terms of the arbitration contract, either expressly or as interpreted by the arbitrators, violate public policy or where the award requires parties undertake some action in violation of public policy. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 42–44, 108 S.Ct. 364, 373–374, 98 L.Ed.2d 286 (1987); *Seymour v. Blue Cross/Blue Shield,* 988 F.2d 1020, 1023 (10th Cir.1993). The decision to reverse an award must be based on "explicit conflict with other 'laws and legal precedents' rather than an assessment of 'general considerations of supposed public interests.'" *Misco,* 484 U.S. at 43, 108 S.Ct. at 373 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Rubber Workers of Am.,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)).

*Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.,* 22 F.3d 1010, 1012 n. 1 (10th Cir.1994).

## III.  DISCUSSION

### A.  *Timeliness of Motion to Vacate*

■ Jeppsen asserts that the applicable time for moving to vacate the arbitration award passed without respondents filing a timely motion to vacate and, therefore, the court's confirmation of the award is mandatory, pursuant to Utah Code Ann. § 78–31a–12 and 9 U.S.C.A. § 9. Both statutes mandate confirmation unless the award is vacated or modified.

Jeppsen first urges that the applicable time period for moving to vacate an arbitration award is twenty days as provided by Utah Code Ann. § 78–31a–14(2).[5] Alternatively, Jeppsen contends that under the NASD Code of Arbitration Procedures,[6] which is incorporated into the arbitration agreement, the parties agreed that a motion to vacate would be made within thirty days, or else the party would perform and pay the award.

Respondents' position is that their motions to vacate are within the three month time period provided by the Federal Arbitration Act.[7] Alternatively, respondents contend that Minnesota's ninety day limitation period applies.[8]

The court notes initially that the parties agreed to be governed by Minnesota law. When Jeppsen opened his account at Piper he signed a Customer Options Agreement containing the following arbitration agreement:

Agreement to Arbitrate. This agreement and its enforcement shall be governed by the laws of the State of Minnesota.... We ... agree and recognize that all controversies ... shall be determined by arbitration to the fullest extent provided by law. Such arbitration shall be in accordance with the rules then in effect, of the

---

5. Utah Code Ann. § 78–31a–14(2) states in part: "A motion to vacate an award shall be made to the court within 20 days after a copy of the award is served ...".

6. Section 41 of the NASD Code of Arbitration Procedures states in part:
   (b) Unless the applicable law directs otherwise, all awards rendered pursuant to this Code shall be deemed final and not subject to review or appeal....
   (h) All monetary awards shall be paid within (30) days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction....

7. "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.

8. Minn.Stat. § 572.19 subd 2 provides in part: "An application under this section shall be made within 90 days after delivery of a copy of the award...."

   Minn.Stat. § 527.20 subd. 1 provides: "Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where...."

Arbitration Committee of the New York Stock Exchange or the National Association of Securities Dealers, Inc. as I may elect....

Customer Options Agreement, ¶ 12. It is undisputed that the arbitration agreement falls within the coverage of the FAA.[9] However, the FAA preempts state law only to the extent "that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Volt Info. Sciences v. Bd. of Trustees,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). The Supreme Court further stated in *Volt* that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." 489 U.S. at 476, 109 S.Ct. at 1254. Inasmuch as the parties contracted that Minnesota law would apply and Minnesota's ninety day limitation period not appearing to conflict with the FAA's three month limitation period, the court concludes that, absent waiver, the parties' stipulation that Minnesota law would govern is enforceable.[10] Although the court finds that the parties waived application of Minnesota law with respect to the state law issues presented to the arbitration panel, there is no evidence of waiver as to the application of Minnesota law regarding the period of limitation for filing a motion to vacate. Respondent's motion to vacate is within the ninety day limitation period provided by Minnesota law. The court is not persuaded by Jeppsen's argument that the NASD Code of Arbitration Procedures, to which the parties agreed to abide, mandates a thirty day limitation period in this case. The court recognizes that the Agreement to Arbitrate as well as the Uniform Submission Agreement provide, in essence, that the parties will be governed by the rules or code of the NASD. Section 41 of the NASD Code of Arbitration Procedures states in relevant part:

(b) Unless the applicable law directs otherwise, all awards rendered pursuant to this Code shall be deemed final and not subject to review or appeal....

(h) All monetary awards shall be paid within thirty (30) days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction....

The quoted passages, when read together, suggest to the court only that the award be paid within thirty days "[u]nless the applicable law directs otherwise". Here, Minnesota applicable law, providing for ninety days to file a motion to vacate, directs otherwise. Therefore, the court concludes that it is appropriate to consider the merits of respondents' motion to vacate.

B. *Motion to Vacate*

1. *Larkin Statute of Limitations Defense*

■ Jeppsen filed his complaint in this court in 1988 based on claims which arose in or before 1987. Larkin was not made a party to that litigation. No claims were asserted against Larkin until March 12, 1993 when Jeppsen filed his statement of claim with NASD for private arbitration. Larkin asserts that Jeppsen's claims were barred by all applicable statutes of limitations and the arbitration award against him was in manifest disregard of the law and arbitrary and capricious.

It is clear that Larkin raised his statute of limitations defense in his Answer filed in the arbitration proceedings. The arbitrators, nevertheless, made an award against him. The award reflects that the arbitrators decided in full the issues submitted. Arbitrators generally have no obligation to give the reasons for their award and they did not do so with respect to Larkin's statute of limitations defense. *See Ormsbee Dev. Co. v. Grace,* 668

---

9. "The Arbitration Act applies to a written arbitration provision in 'a contract evidencing a transaction involving commerce.' 9 U.S.C. § 2" *Foster v. Turley,* 808 F.2d 38, 40 (10th Cir.1986).

10. *See Shearson Lehman Brothers, Inc. v. M & L Investments,* 10 F.3d 1510 (10th Cir.1993) (Applying Utah choice of law principles in diversity action, stockbroker and purchaser's stipulation that New York law would govern their agreement would be enforced absent waiver where broker's principal place of business was in New York, although purchasers were Utah residents.).

F.2d 1140, 1147 (10th Cir.) ("arbitration awards generally need not delineate reasons or reasoning"), *cert. denied*, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). There is no evidence that the arbitrators ignored the law with respect to the statute of limitations as respondents assert. The record is clear that Jeppsen argued to the arbitrators that respondents, including Larkin, sought to hide their wrongs through fraudulent concealment and that such fraudulent concealment could provide a basis for tolling the statute of limitations or alternatively that the statute of limitations had not yet commenced to run. As previously noted, arbitrators' mistakes of fact and law are not grounds to vacate the award. Only manifest disregard of the law provides adequate grounds for vacating an arbitration award. Manifest disregard has been characterized as "willful inattentiveness to the governing law." *Jenkins v. Prudential–Bache Sec. Inc.*, 847 F.2d 631, 634 (10th Cir.1988).

> Manifest disregard "may be found 'when arbitrators understand and correctly state the law, but proceed to disregard the same.'" ...
>
> If a court is to vacate an arbitration award on the basis of a manifest disregard of the law, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it.

*O.R. Securities, Inc. v. Professional Planning Assos., Inc.*, 857 F.2d 742, 747 (11th Cir.1988) (quoting *Stroh Container Co. v. Delphi Industries, Inc.* 783 F.2d 743 (8th Cir.), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986)). No evidence presented to the court reflects that the arbitrators willfully and expressly ignored governing law. The court, therefore, concludes that there is no basis to grant Larkin's motion on this issue.

### 2. *Punitive Damages*

The arbitrators awarded Jeppsen $250,000 in punitive damages against Larkin and Barker individually and separately "in accordance with *Crookston v. Fire Insurance Exchange,* 817 P.2d 789 (Utah 1991) and Utah Securities Act, Sections 61–1–22, U.C.A. and 78–18–1, U.C.A." Arbitration Award, pp. 3–4. Larkin and Barker contend that the arbitrators exceeded their powers when they imposed punitive damages because Minnesota law prohibits arbitral punitive damage awards and because confirmation of the punitive damage award would violate due process. They further assert that the arbitrators disregarded the law on which the punitive damage award was based because the arbitrators cited and apparently relied on *Crookston,* but failed to consider, as required, the relative wealth of respondents before assessing punitive damages.

■ The court agrees with Jeppsen that respondents waived application of Minnesota law on this issue.[11] "[A party] cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him is handed down complain of a situation of which he had knowledge from the first." *Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.,* 449 F.2d 106, 107–108 (2nd Cir.1971), *cert. denied.,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972). *See also Peabody v. Rotan Mosle, Inc.,* 677 F.Supp. 1135 (M.D.Fla.1987) (Respondent's failure at arbitration to object to claimants' argument, waived that claim before the District Court). No evidence has been presented to the court that the parties argued Minnesota law to the arbitration panel. On this issue, the parties apparently relied upon and argued Utah law. It is clear that Jeppsen was asserting claims in part under Utah law, including his claim for punitive damages. The court finds without merit respondents' argument, that because the Customer Options Agreement containing the agreement to arbitrate and the Minnesota Choice of Law provision was submitted as one of 266 exhibits, that the application of Minnesota law was adequately brought to the attention of the arbitration panel. Nowhere have respondents cited to the court any reference where

---

11. Jeppsen urges that respondents have waived, for failure to argue to the arbitrators, the application of Minnesota law or the arbitrators' purported lack of authority to award punitive damages. Jeppsen contends that, at all times throughout the history of this case, respondents have argued and relied exclusively on Utah law with respect to any state law claims.

they argued the applicability of Minnesota law or objected to the application of Utah law. The court concludes, therefore, that respondents failure to assert Minnesota law and to object to Utah law on the issue of punitive damages precludes them from now asserting the arbitrators' purported failure to apply Minnesota law as a grounds for vacating the award. Moreover, the court is not persuaded that Minnesota law, even if applicable, prohibits punitive damages. *See Kennedy, Matthews, Landis, Healy & Pecora, Inc. v. Young*, 524 N.W.2d 752 (Minn.App. 1994) (Minnesota law does not prohibit award of punitive damages in arbitration proceedings).

Similarly, the court finds that respondent's failure to raise the arbitrators' purported lack of authority to award punitive damages now precludes them from raising that issue before the court as a basis for vacating the award. See *Ormsbee* 668 F.2d at 1146 (10th Cir.) ("Parties who agree to submit matters to arbitration are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included in the authority of the arbitrators."); *Jones Dairy Farm v. Local No. P–1236, United Food & Commercial Workers Int'l Union, AFL–CIO*, 760 F.2d 173, 175–76 (7th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it."). The court finds no merit in respondents' position that they argued to the arbitration panel that there were two cases before the panel, a churning case which they agreed to arbitrate and another case involving fraud and relating to matters beyond the scope of their agreement to arbitrate. In direct response to the panel's inquiry "... are you taking the position that there is some aspects of this claim that are not within the scope of the submission agreement", (Tr. at 25) respondents' attorney answered "... as a technical matter, I can't make that objection." (Tr. at 26.)

■ As to Barker and Larkin's claim that Utah law was misapplied for failure to consider relative wealth, Jeppsen asserts that

there is language in *Crookston* which justifies an award of punitive damages even in the absence of relative wealth. However, the court need not probe this issue. Even if the arbitrators erred in their application of Utah law by failing to consider the relative wealth of Barker and Larkin before assessing punitive damages, it was at most an error of law. As previously noted an arbitrator's erroneous application or interpretation of the law is not a basis for the court to vacate the award. Only manifest disregard of the law provides adequate grounds for vacating an arbitration award. The court finds no grounds to conclude that the arbitrators willfully disregarded applicable law.

■ Finally, with respect to Barker and Larkin's claim that they have been denied due process, "[a]ssuming that fair procedures were followed, a judgment that is a product of that process is entitled to a strong presumption of validity." *TXO Production Corp. v. Alliance Resources Corp.*, —— U.S. ——, ——, 113 S.Ct. 2711, 2720, 125 L.Ed.2d 366 (1993). Barker and Larkin contend generally that awarding punitive damages in the context of arbitration denies them due process safeguards, including meaningful and adequate judicial review, to which they are entitled. The court disagrees.

> Arbitration is a creature born of a contract between parties who are desirous of avoiding litigation in a court of law.... Arbitrators are not judges of a court nor are they subject to the general superintending power of a court. Arbitration provides neither the procedural protections nor the assurance of the proper application of substantive law offered by the judicial system. Those who choose to resolve a dispute by arbitration can expect no more than they have agreed. One choosing arbitration should not expect the full panoply of procedural and substantive protection offered by a court of law. In short, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the [perceived] simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29–33, 111 S.Ct. 1647, 1654–55, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi*

*Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)); *see Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 481–82, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989).

.        .        .        .        .

The courts seem to agree that a fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias. *Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.,* 22 F.3d 1010, 1011–1013 (10th Cir.1994). Barker and Larkin have failed to assert any specific defects in the arbitration proceeding which could constitute a denial of due process.

3. *Treble Damages*

■ The arbitration panel awarded Jeppsen damages of $603,000. Respondents assert that the arbitrators' damage figure of $603,000 is not actual damages, but based on a finding of $201,000 of actual damages which was trebled under Utah's blue sky statute. Respondents argue that this exceeded the arbitrators' power and was in manifest disregard of the law because they were governed by Minnesota law, which does not provide for treble damages and does not provide a private remedy for the claims alleged by Jeppsen. Additionally, even if Utah law were applicable, respondents urge that by the plain language of Utah's blue sky statute only courts can treble damages. Respondents also urge that Utah's blue sky laws do not provide Jeppsen with a private remedy which arises only when fraudulent statements or omissions are made as an inducement to buy or sell a security. Finally, respondents urge that treble damages, punitive in nature, violate due process because there is no meaningful or adequate judicial review in an arbitration context. Respondents seek a modification to reduce the $603,000 award to $201,000.

The award is silent concerning the specific factual and legal bases upon which the arbitrators awarded damages of $603,000. The court, therefore, cannot conclude that the damage award of $603,000 constitutes treble damages. Even if it were, however, Jeppsen postulates, and the court agrees, that the arbitrators may well have awarded treble damages under RICO or under Utah's blue sky statute. As previously discussed in the context of punitive damages, the court likewise here finds respondents waived application of Minnesota law on the issue of treble damages. It is clear that Jeppsen's claim for treble damages was asserted in part under Utah law. No evidence has been presented to the court that the parties argued Minnesota law on this issue. Similarly, the court concludes that respondents waived, for failure to argue to the arbitration panel, any argument that the arbitrators lacked authority to award treble damages. "In any event, courts are not to instruct the arbitrator as to the correct compilation of damages." *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455 (10th Cir.1995) (citing *Marion Mfg. Co. v. Long,* 588 F.2d 538, 541 n. 3 (6th Cir.1978)). As noted previously, the court does not review for errors of fact or law. Lastly, based on the authorities cited earlier, the court finds respondents' due process argument without merit.

4. *Arbitrators Award of Both Treble Damages and Punitive Damages*

■ Respondents urge that, even if the arbitrators had the power to award punitive and treble damages, they could not award both and it was a manifest disregard of the law for them to do so. They cite *MidAmerica Federal S & L v. Shearson/American Express, Inc.,* 962 F.2d 1470, 1473 (10th Cir. 1992) for the proposition that a plaintiff generally cannot recover duplicative damages. Awarding both forms of damages, they assert, amounts to two forms of punishment for the same conduct.

Jeppsen contends that no law regarding this issue was ever raised or brought to the attention of the arbitrators. Jeppsen urges that respondents' failure to argue to the arbitrators that they could not award both treble and punitive damages, assuming that the $603,000 constitutes treble damages, has been waived and they cannot now raise the issue. Jeppsen also urges that none of the

cited Utah law expressly precludes the arbitrators' award. The court agrees. Additionally, as previously noted, because the award is silent concerning the specific factual and legal bases upon which the arbitrators awarded damages of $603,000, the court cannot conclude that the award constitutes treble damages. Lastly, there is nothing in the record to support the claim that the arbitrators manifestly disregarded the law on this issue. As noted, error in the interpretation and application of the facts and law is not a basis for the court to vacate an arbitration award.

### 5. Pre-award Interest

■ The arbitrators awarded Jeppsen damages of $603,000 "together with interest at the rate of ten percent (10%) per annum from January 1, 1988, until paid." Arbitration Award, p. 3. Respondents urge that the arbitrators exceeded their powers by not only awarding pre-award interest on the trebled amount, rather than only on the actual compensatory amount, but by also substituting Utah's ten percent rate in place of Minnesota's four percent rate. Jeppsen asserts that respondents failed to bring to the arbitrator's attention any clearly governing law on this issue thereby precluding a finding of manifest disregard of the law.

As noted previously, the award is silent as to how the damage figure of $603,000 was ascertained. The court, therefore, cannot conclude that the amount represents treble damages. However, even if the $603,000 were treble damages, the court finds no grounds to vacate the arbitrator's grant of pre-award interest. The legal theories argued to the arbitration panel provided an arguable bases for awarding interest.[12] Mistakes in the application or interpretation of the law are not grounds to vacate the award. Moreover, it is clear that Jeppsen requested interest at the rate of 10% based on Utah law. Although respondents generally challenged the award of any interest, they did not assert that Minnesota's 4% rate was the appropriate rate. Thus, the court finds that

respondents waived application of Minnesota law.

### 6. Public Policy

■ Respondents assert that the award of punitive and treble damages and prejudgment interest on treble damages is contrary to public policy. They urge that "[g]ood public policy mandates that the arbitrators not be allowed to arrogate to themselves the power to award punitive damages." Piper Memorandum In Support of Motion to Vacate, p. 17. Respondents suggest that the court ought to declare it against public policy for arbitrators to award punitive damages. Applying the standard of review previously set forth, the court finds no basis to vacate the award for public policy reasons.

### 7. Attorneys Fees and Costs

■ The arbitrators awarded Jeppsen "[a]ttorney's fees and costs of $388,541.55, in accordance with Utah Securities Act, Section 61–1–22, U.C.A." Arbitration Award, p. 3. Respondents contend that the arbitrators had no authority to grant attorneys fees and costs because the only private right to recover under Utah Code Ann. § 61–1–22 for securities fraud is for misrepresentation or omission of material fact in connection with the purchase or sale of a security which has no application in this case. They contend that Jeppsen's case was based on churning and discretionary trading of Jeppsen's account, not omissions or misrepresentations in connection with the purchase or sale of a security. Therefore, respondents contend, Jeppsen did not prove any right under § 61–1–22 to recover fees and costs.

Even if true, the court's view is that this is a mistake of fact or law not subject to review. The court, as previously discussed, finds that respondents waived application of Minnesota law. It is clear that Jeppsen sought treble damages *and attorneys' fees* pursuant to the Utah Securities Act. Likewise, the court is not persuaded that, simply because respon-

---

12. Jeppsen contends that Utah Code Ann. § 61–1–22(2), on its face, allows prejudgment interest to be applied to the trebled amount, assuming the $603,000 is a result of trebling. Jeppsen also

urges that there is at least an arguable rational basis under RICO for awarding interest on the entire $603,000.

dents argued to the arbitrators that an untrue statement or omission had to be established for there to be a private remedy under Utah's blue sky Laws, the award of attorneys fees was in manifest disregard of the law.

### IV. CONCLUSION

For the reasons stated, Jeppsen's Motion to Confirm is GRANTED. Respondents' Motion to Vacate is DENIED.