**R.D. MANAGEMENT CORP., Saginaw Realty Limited Partnership and J & W Management Corp., Plaintiffs,**

v.

**PHILADELPHIA INDEMNITY INSURANCE COMPANY, Defendant.**

No. 01–CV–10305–BC.

United States District Court, E.D. Michigan, Southern Division.

Feb. 17, 2004.

Mark A. Goldsmith, Andrew S. Doctoroff, Honigman, Miller, Detroit, MI, for Plaintiffs.

Danny C. Keene, Flint, MI, for Defendant.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

The plaintiffs originally filed their complaint in this Court to enforce a property insurance contract issued by the defendant following the destruction by fire of certain commercial properties. The principal dispute involved the amount of the loss, and it was eventually resolved through an appraisal process prescribed by the insurance policy and Michigan law. The parties have returned to this Court seeking a resolution of the sole remaining issue of whether the plaintiffs are entitled to a judgment on the appraisal award and interest on the unpaid amount of their loss prior to filing their complaint, plus post-complaint interest. The matter is now before the Court on the parties' cross-motions for summary judgment. The Court finds that the parties have adequately set forth the relevant law and facts in their briefs and motion papers, and oral argument would not aid in the disposition of the instant motion. *See* E.D. Mich. LR 7.1(e)(2). Accordingly, the Court **ORDERS** that the motion be decided on the briefs submitted. After having considered the arguments, the Court finds that the appraisers did not have the authority under the insurance contract or the applicable Michigan statute to award common-law interest as an element of the plaintiffs' loss, and therefore the plaintiffs properly may seek that relief from this Court. In addition, the plaintiffs are entitled to entry of a judgment for the amounts owed, and Michigan's judgment interest statute thereby mandates an award of interest from the date the complaint was filed, for reasons explained more fully below. The Court, therefore, will grant the plaintiffs' motion for summary judgment and deny the defendant's motion for summary judgment.

I.

The plaintiffs suffered significant damage to their shopping center known as the Tri–City Plaza/Dixie Center located in Saginaw, Michigan as a result of a fire on August 31, 1999. At the time, the premises were covered by a policy of hazard insurance issued by the defendant, which provided for payment of the replacement cost (RCV) of property damaged by fire under the conditions set forth in the policy. Two of those conditions triggering the RCV method of valuing the loss were that the insured actually repair or replace the damaged property, and that the insured take that action "as soon as reasonably possible after the 'loss.'" Pls.' Compl. Ex. 1, Ins. Policy ¶ E(7)(2). The policy further

states that if those conditions are not met, the insurer will pay the actual cash value (ACV) of the damaged property. The plaintiffs immediately filed a claim with the defendant, who paid the plaintiffs an amount in excess of $400,000 based on the ACV of the damaged property. Thereafter, the plaintiffs discovered additional damage and submitted an amended proof of loss seeking approximately $760,000 to cover the loss valued on the basis of the replacement cost of the damaged property. However, the defendant paid only an additional $70,000. According to the defendant, it refused to pay the entire claim because some of the RCV sought covered items that had "not been repaired or replaced and/or for which expenditures had not been made, which is a prerequisite under the policy for RCV coverage." Def.'s Mot. for Summ. J. at 4.

The plaintiffs then filed a complaint on August 24, 2001 alleging diversity jurisdiction and breach of the insurance contract and seeking a declaration of coverage, a judgment for amounts due under the policy, and costs and interest including penalty interest under Mich. Comp. Laws § 500.2006(4) and interest under Mich. Comp. Laws §§ 438.7 and 600.6013. On March 13, 2002, the plaintiffs invoked their rights under the policy and Mich. Comp. Laws § 500.2833(1)(m) for an appraisal to determine the amount of loss. The parties advised the Court that they believed this process would resolve their dispute, and on September 23, 2002 this Court dismissed the case without prejudice pursuant to a stipulation of the parties. The Court's order permitted either party to file a notice to reopen the case within sixty days following the filing of an appraisal report by an umpire. The parties each selected an appraiser, although the plaintiffs contend that the defendant appointed its appraiser after the statutory twenty-day selection period. Belatedly, the two appraisers chose one impartial umpire.

On December 13, 2002, the appraisers and umpire unanimously determined that the total amount of the loss was $809,377.97, of which $791,538,82 was for property loss and $17,839.15 was for loss of rents. This sum included amounts the defendant already paid to the plaintiffs, so that with proper set-offs the net sum that remained owing was $321,474.29. The defendant paid the outstanding amount on January 31, 2003. The defendant was ready to pay the amount on January 13, 2003, but the plaintiffs feared a public adjuster's lien and from that date the additional time was necessary to remove the public adjustor's name from the payment draft.

The plaintiffs submitted notice to this Court to reopen the case on December 26, 2002. The plaintiffs now claim that the appraisal amount did not include interest, and they request the Court to award pre- and post-complaint interest. The Court ordered the case reopened on January 16, 2003, and the parties have filed cross motions for summary judgment. In support of their motion, the plaintiffs have submitted a declaration by Robert Levin, the plaintiffs' appraiser, wherein he stated that the appraisers and the umpire never discussed the issue of either pre-complaint or post-complaint interest. Levin stated that during the appraisal process an award of interest would typically not be made, or even considered, without instruction to examine the issue of interest from the court.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The parties have filed cross motions for summary judgment, and neither suggests that there

are facts in dispute. Nonetheless, the Court must apply the well-recognized standards when deciding cross motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir.2003). Thus, when this Court evaluates cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506–07 (6th Cir.2003).

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons–Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir.2000).

As previously mentioned, the plaintiffs have invoked this Court's diversity jurisdiction. In federal cases based upon diversity jurisdiction, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data" includes the state's intermediate appellate court decisions, *ibid.,* as well as the state supreme court's relevant *dicta,* "restatements of law, law review commentaries, and the 'majority rule' among other states." *Angelotta v. American Broad. Corp.,* 820 F.2d 806, 807 (6th Cir.1987).

█ In this case, Michigan law governs. The parties do not quarrel with the concept that under Michigan law interest may be awarded to compensate an aggrieved party for the lost use of money. For instance, in contract cases, interest is payable on amounts that have been liquidated by, among other things, the "report of referees, award of arbitrators ... or by any other mode of assessment according to law" from the time of liquidation until the claim is satisfied. Mich. Comp. Laws § 438.7. Thus, when parties to a contract containing an arbitration clause have submitted their dispute to an arbitrator, received an award, and commenced a civil action to confirm and enforce the award, interest is payable from the date of the award to the date of filing the complaint measured at the "legal rate" provided by Mich. Comp. Laws § 438.31, which is five percent. *See Gordon Sel–Way, Inc. v. Spence Bros., Inc.,* 438 Mich. 488, 504, 475 N.W.2d 704, 713 (1991). In addition, when a judgment confirming an arbitration award is entered, the prevailing party is entitled to interest from the date of filing the complaint to the date of judgment measured at the variable rate set forth in Mich. Comp. Laws § 600.6013, and interest after judgment is payable at that rate until judgment is satisfied. *See* Mich. Comp. Laws § 600.6013(1), (8); *Gordon Sel–Way,* 438 Mich. at 510–11, 475 N.W.2d at 716. Furthermore, Michigan law recognizes the notion that common-law interest may be awarded to a claimant as "a legitimate element of damages used to compen-

sate the prevailing party for the lost use of its funds." *Id.* at 499, 475 N.W.2d at 710; *see also Manley, Bennett, McDonald and Company v. St. Paul Fire & Marine Insurance Company,* 821 F.Supp. 1225, 1228 (E.D.Mich.1993). Finally, under Mich. Comp. Laws § 500.2006(1) and (4), "penalty interest" may be awarded when benefits due under an insurance policy are not paid timely. *See Yaldo v. North Pointe Ins. Co.,* 457 Mich. 341, 578 N.W.2d 274 (1998).

■ However, the defendant in this case argues that the plaintiffs are not entitled to penalty interest because the amount due the insured was reasonably in dispute and it did not become certain until after the conclusion of the appraisal process. The defendant cites *O.J. Enterprises, Inc. v. Ins. Co. of North America,* 96 Mich.App. 271, 292 N.W.2d 207 (1980), which held that the courts must read the penalty interest statute in conjunction with the appraisal provisions in the Michigan standard fire policy statute and concluded that "insurers will be allowed up to 60 days from the date of the appraiser's award to pay awarded benefits to policy holders" without being subject to the obligation to pay penalty interest. *Id.* at 274, 292 N.W.2d at 209. The defendant similarly argues that the plaintiffs are not entitled to interest under the interest-on-judgment statute, Mich. Comp. Laws § 600.6013, once again citing *O.J. Enterprises,* because the defendant claims that it did not contest the amount of the loss and judicial intervention was not necessary to settle the award. It is on this basis that both the defendant and the *O.J. Enterprises* court sought to distinguish *Davis v. National American Ins. Co.,* 78 Mich.App. 225, 259 N.W.2d 433 (1977), in which the court of appeals affirmed a judgment in favor of a claimant in a suit filed to enforce an appraisal award for a fire loss. Finally, the defendant argues that since the appraisers did not award interest, the court may not step in to supplement the apprais-

al award by adding interest to the amount of loss determined by the appraisers. The defendant cites *Holloway Const. Co. v. Oakland County Bd. of Road Comm'rs.,* 450 Mich. 608, 543 N.W.2d 923 (1996), in support of its argument.

The Court agrees that the plaintiffs are not entitled to "penalty interest" under Mich. Comp. Laws § 500.2006(4), and the plaintiffs do not seriously contest the point here. Although the Michigan Supreme Court has interpreted Mich. Comp. Laws § 500.2006(4) to allow an award of twelve percent penalty interest on tardy payments even when the claim is reasonably in dispute, *see Yaldo,* 457 Mich. at 348–49, 578 N.W.2d at 277, *O.J. Enterprises* has never been overruled and still supports the proposition that the sixty-day, statutory grace period for timely payments does not begin to run until the issuance of the appraisal award. The defendant tendered payment of the amount determined by the appraisers within that time period in this case.

The question of whether the plaintiffs may recover interest from the time of the loss through the date the amount of the loss was determined by the appraisal process requires the Court to decide whether the appraisers and the umpire had the authority to award interest. The Michigan Supreme Court has held that when such authority exists, courts may not set aside an award of interest, *see Old Orchard by the Bay Associates v. Hamilton Mut. Ins. Co.,* 434 Mich. 244, 454 N.W.2d 73 (1990), nor may courts supplement an award that is silent on the element of interest, since it is presumed that arbitrators considered interest as an element of damages and rejected it. *See Holloway,* 450 Mich. at 617, 543 N.W.2d at 927 (holding that "because pre-award damage claims are considered to have been submitted to arbitration, [the arbitrator's] silence

**734**

on the interest claim is deemed to be a decision not to award the interest").

Under Michigan law, arbitration agreements can take two forms. "Statutory arbitration," as the name implies, is arbitration that is governed by the provisions of the Revised Judicature Act and the applicable provisions of the Michigan Court Rules. The scope of the arbitrators' authority under statutory arbitration extends to "any controversy arising under [the] contract not expressly exempt from arbitration by the terms of the contract." Mich. Comp. Laws § 600.5001(2). The other form of arbitration recognized by Michigan law is "common-law arbitration." Under that form of arbitration, "the arbitrators' authority is governed solely by the terms of the arbitration agreement," and "[i]ndependent of the contract, an arbitration panel has no jurisdiction over a particular dispute." *Beattie v. Autostyle Plastics, Inc.*, 217 Mich.App. 572, 578, 552 N.W.2d 181, 183 (1996).

 The distinguishing feature that characterizes an agreement as calling for statutory arbitration is a provision authorizing judicial enforcement of an arbitration award. If the parties' agreement does not provide that judgment shall be entered in accordance with the arbitrator's decision, common-law, rather than statutory, arbitration is involved. *Ibid.* Judicial review of a common law arbitration agreement is limited to instances of bad faith, fraud, misconduct, or manifest mistake. *Emmons v. Lake States Ins. Co.*, 193 Mich. App. 460, 466, 484 N.W.2d 712, 715 (1992).

 The appraisal language in the insurance policy in this case comes from the standard fire insurance policy provisions prescribed by Mich. Comp. Laws § 500.2833(1)(m). Neither the statute nor the policy provides for entry of a judgment on the appraisal award. In fact, the policy specifically states, "If there is an appraisal, we [the insurance company] will still retain our right to deny the claim." Pls.' Compl. Ex. 1, Ins. Policy ¶ E(2). The appraisal provision, therefore, is a species of common-law arbitration. *See Davis*, 78 Mich. App. at 232, 259 N.W.2d at 437. Consequently, the Court must examine the appraisal provision to determine if it authorizes the appraisers to award interest as an element of damages. The arbitrators are bound to follow the guidelines set forth in the parties' agreement, since the scope of the arbitration is determined by the contract. *Gogebic Medical Care Facility v. AFSCME Local 992, AFL–CIO*, 209 Mich. App. 693, 696–97, 531 N.W.2d 728, 730 (1995).

As previously mentioned, in *Gordon Sel–Way, Holloway* and *Old Orchard,* the Michigan Supreme Court held that a judicial authority may not tamper with an arbitration award by either adding interest when none is awarded or striking an interest award when one is conferred by the arbitrators. However, in those cases the courts were called upon to construe statutory arbitration agreements that conferred broad authority on the arbitrators. For instance, in *Gordon Sel–Way* the arbitrator was authorized to "grant any remedy or relief which is just and equitable within the terms of the agreement of the parties." 438 Mich. at 498, 475 N.W.2d at 711. The parties in *Old Orchard* did not have a prior arbitration agreement, but they agreed to submit the case to statutory arbitration after commencing a lawsuit, and therefore the scope of the arbitrators' authority was broadly defined by Mich. Comp. Laws § 600.5001(2). 434 Mich. at 247 & n. 1, 454 N.W.2d at 74 & n. 1. In *Holloway*, "[t]he arbitration agreement provided that the arbitrators, within their discretion, could grant any remedy or relief that they deemed just and equitable and within the scope of the agreement of the parties, including arbitration fees and expenses against either party." 450 Mich.

at 610–11, 543 N.W.2d at 924. The court observed that although "interest" was not specifically addressed in any of the grants of authority to arbitrators in those cases, the language in the contracts would be interpreted to authorize an award of interest " 'absent a provision expressly precluding authority to award interest as an element of damages,' " as statutory arbitration clauses generally are construed. *Id.* at 614, 543 N.W.2d at 926 (quoting *Gordon Sel–Way*, 438 Mich. at 498, 475 N.W.2d at 711).

In contrast, the language of the insurance policy authorizing an alternative dispute resolution procedure states:

## 2. Appraisal

If we and you disagree on the value of the property or the amount of **"loss,"** either may make written demand for an appraisal of the **"loss."** In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **"loss."** If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Pls.' Compl. Ex. 1, Ins. Policy ¶ E(2) (emphasis in original). The corresponding Michigan statute states:

(1) Each fire insurance policy issued or delivered in this state shall contain the following provisions:

. . .

(m) That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by the insured and the insurer.

Mich. Comp. Laws § 500.2833(1)(m)

 The appraisal language in the policy and the statute is different than the broad grant of authority to arbitrators exemplified by *Gordon Sel–Way, Holloway* and *Old Orchard.* The policy itself defines "loss" as "accidental loss or damage." Nowhere in the policy is there language that suggests that the term includes the lost use of funds. The Court finds as a matter of law that the appraisal language in the policy and the statute does not confer the authority to award common-law interest as an element of damages. Rather, the ap-

praisal language defines a method of determining the value of the damaged property and the insured's compensable loss resulting from that damage. In the context of a fire insurance policy, that amount could be the actual cash value of the damaged property if it were totally damaged and not replaced by the insured, or the replacement cost of the property if replacement-cost coverage were purchased and the conditions for triggering that method of valuation were satisfied. There is no provision, however, for awarding an amount to compensate the insured for the time value of money pending settlement of the claim, and the appraisers had no authority to read in such a provision.[1]

 Since the appraisers could not award common-law interest, which is a

legitimate element of damages, the plaintiffs may look to the Court for that relief. The purpose of such an award, once again, is "to fully compensate the plaintiff." *Manley*, 821 F.Supp. at 1228. The plaintiffs contend that the Court should look to the interest rate set out in the judgment interest statute to determine the appropriate rate of common-law interest in the pre-complaint stage of this case. Indeed, that was the reference point used by the district court in *Manley*. See id. at 1229. The plaintiffs reason, therefore, that they should receive twelve percent compounded interest on the amount of their loss up to the date that they filed their complaint. See Mich. Comp. Laws § 600.6013(5) (stating that for complaints filed between January 1, 1987 and July 1, 2002, judgments on

---

1. The plaintiffs note that the appraisers in fact did not consider the issue of interest and point to the affidavit of the plaintiffs' appraiser, Robert Levin, in support of that argument. However, the Court does not consider that affidavit because an arbitrator may not testify or submit an affidavit for the purpose of impeaching, clarifying, or explaining his award. *See Wood v. General Teamsters Union, Local 406*, 583 F.Supp. 1471, 1473 (W.D.Mich. 1984); *see generally Admissibility of Affidavit or Testimony of Arbitrator to Impeach or Explain Award*, 80 A.L.R.3d 155 (1977). *See also Local P–9, United Food and Commercial Workers Intern. Union, AFL–CIO v. George A. Hormel & Co.*, 776 F.2d 1393, 1395 (8th Cir. 1985) (holding that "it is generally improper for an arbitrator to interpret, impeach, or explain a final and binding award"); *Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich & Co., A.G.)*, 579 F.2d 691, 702 (2d Cir.1978) (stating that "in the special context of what are in effect post hoc efforts to induce arbitrators to undermine the finality of their own awards, ... any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented"); *Sperry Intern. Trade, Inc. v. Government of Israel*, 602 F.Supp. 1440, 1443 (S.D.N.Y.1985) (stating that "an arbitrator may not testify as to the meaning or construction of his written award. Any other view

would make arbitration not the end, but only one step in the progress of litigation.") (citation omitted); *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276, 1286 (S.D.N.Y.1979) (stating that " '[p]ost-verdict' examinations of a judicial or quasi-judicial officer, be he judge, juror, or arbitrator, for the purpose of impeaching his decision, are inherently suspect, indeed, roundly condemned, in our system of jurisprudence: An arbitrator should not be called upon to give a reason for his decision. Inquisition of an arbitrator for the purpose of determining the processes by which he arrives at an award, finds no sanction in law."); *Gramling v. Food Machinery & Chemical Corp.*, 151 F.Supp. 853, 860 (D.S.C.1957) (stating that arbitration board's deliberations were as much a part of the judicial process as a jury's deliberations would have been and should be as zealously protected, and, therefore, the tendering of affidavits of two of the arbitrators and the moving of the court for an order requiring all arbitrators to appear in court for examination and cross-examination regarding method of arriving at their award in order to impeach the award constituted an improper mode of attacking the arbitration award). *Cf.* Fed. R. Evid 606(b) (stating that a juror may not testify or furnish an affidavit to impeach a verdict or discuss mental processes but may give evidence of improper extraneous influence).

written instruments earn interest at twelve percent compounded annually unless the instrument bears a higher rate).

The Court does not agree, however, that twelve percent is necessary to compensate the plaintiffs for the lost use of funds or that *Manley* requires that result. The court in *Manley* used Mich. Comp. Laws § 600.6013 as a guide for determining a common-law interest rate because both parties agreed to it. *Manley*, 821 F.Supp. at 1229. That is not the only guide, however. In *Gordon Sel–Way*, the Michigan Supreme Court observed that "common-law interest as damages shares the same 'full compensation' goals of [Mich. Comp. Laws § ] 438.7 and [Mich. Comp. Laws § ] 600.6013." *Gordon Sel–Way*, 438 Mich. at 499 n. 9, 475 N.W.2d at 710 n. 9. The rate of interest engrafted onto Section 438.7 is the "legal rate" found in Mich. Comp. Laws § 438.31, or five percent. *Gordon Sel–Way*, 438 Mich. at 506, 475 N.W.2d at 714. The Court believes that five percent simple interest adequately compensates the plaintiffs for the lost use of funds from the date of loss until the complaint was filed, and it more closely approximates the variable rates yielded by the formula set forth in the judgment interest statute, which reflect the market rate for funds during those periods.

■ The Court also finds that the plaintiffs are entitled to entry of a judgment for the amount of common-law interest owing, together with the unpaid amount of the property loss, as in *Davis*. This is not a case like *O.J. Enterprises* where the insurer advanced money to the insured, the parties sought an appraisal, and then the insured brought suit. *See O.J. Enterprises*, 96 Mich.App. at 273, 292 N.W.2d at 208. Rather, in this case the defendant rejected the plaintiffs' amended proof of loss, and the plaintiffs then sought judicial intervention to enforce their rights under the insurance policy. The suit was pending for over six months before the parties agreed to use the appraisal process to determine the amount of the loss. The defendant paid the amount of the loss on time so as to avoid the obligation to pay penalty interest under Mich. Comp. Laws § 500.2006(4), but that payment did not make the plaintiffs whole, since common-law interest is still owing.

In *Gordon Sel–Way*, the court concluded that when an arbitration award is rendered, and then a complaint is filed to confirm the award: (1) arbitrators have authority to grant pre-award interest as an element of damages when necessary to allow "full compensation," unless there is an explicit agreement to the contrary, *Gordon Sel–Way*, 438 Mich. at 499, 475 N.W.2d at 710; (2) prejudgment interest commences on the day the award is rendered under Mich. Comp. Laws § 438.7 (at the "legal rate" set forth in Mich. Comp. Laws § 438.31) until a complaint is filed, at which point Mich. Comp. Laws § 600.6013 takes over until judgment; and (3) Mich. Comp. Laws § 600.6013 governs payment of interest until the judgment is satisfied. *Id.* at 510–11, 475 N.W.2d at 716. This case differs from *Gordon Sel–Way* in that the amount was not liquidated when the complaint was filed. Nonetheless, the Court believes that the rule of that case requires the Court to calculate interest from the date the complaint was filed through the date of judgment in accordance with Mich. Comp. Laws § 600.6013(8) at the variable rate described therein. *See Holloway*, 450 Mich. at 618, 543 N.W.2d at 927–28 (holding that when parties to a pending lawsuit submit their claim to binding arbitration, "postaward, prejudgment interest and postjudgment interest under § 6013 are statutorily required").

The Court finds, therefore, that the plaintiffs are entitled to common-law inter-

738

est from the date of loss, August 31, 1999, to the date of filing the complaint, August 24, 2001, on the principal amount of $321,474.29. From August 25, 2001 until January 13, 2003, the date the defendant was prepared to tender payment of the outstanding balance owing on the loss, the plaintiffs are entitled to interest at the variable rate according to the formula set forth in Mich. Comp. Laws § 600.6013(8).

### III.

The plaintiffs sought interest under common law and a variety of statutes when they filed their complaint. The Court finds that the appraisers did not have authority to confer this relief because their authority was circumscribed by the terms of the insurance policy. The Court finds that common-law interest is necessary to fully compensate the plaintiffs for their loss, and that the plaintiffs are entitled to a judgment on the amounts sought in their complaint. Michigan law entitles a party in whose favor a judgment is entered to receive interest from the date the complaint is filed.

Accordingly, it is hereby **ORDERED** that the plaintiffs' motion for summary judgment [dkt # 38] is **GRANTED.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 36] is **DENIED.**

It is further **ORDERED** that the parties shall present a judgment in accordance with this opinion and order for entry by the Court on or before **February 27, 2004.**