Donna UHL, Personal Representative of the Estate of Lynn Uhl, and Donna Uhl, Individually, Plaintiff,

and

Pacific Employer's Insurance Company, Intervening Plaintiff,

v.

KOMATSU FORKLIFT CO., LTD, and Komatsu Forklift, USA, Inc., Defendants.

No. 04–10148.

United States District Court, E.D. Michigan, Southern Division.

Dec. 8, 2006.

David R. Skinner, Staci M. Richards, Skinner Professional Law Corp., Bay City, MI, for Plaintiff.

Roy W. Johnson, Johnson & Johnson, Troy, MI, for Intervening Plaintiff.

Fred J. Fresard, Jeffrey T. Gorcyca, David J. Gentile, Bowman & Brooke, Troy, MI, for Defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO VACATE ARBITRATION AWARD, GRANTING PLAINTIFFS' MOTION TO CONFIRM ARBITRATION AWARD, AND DENYING PLAINTIFFS' MOTION FOR WRIT OF GARNISHMENT

LAWSON, District Judge.

The plaintiff, Donna Uhl, filed this action to recover damages resulting from the death of her husband, decedent Lynn Uhl. The plaintiff alleges that Lynn Uhl's death was caused by a defective product manufactured by the defendants. After one false start, the parties filed a stipulation to submit the case to binding arbitration. The Court therefore dismissed the case with the proviso that it retained jurisdiction to adjudicate motions relating to the arbitral award. The arbitrators rendered an award in favor of the plaintiffs, and the plaintiff and intervening plaintiff filed a motion to enforce the award. The defendants responded with a motion to vacate the arbitral award. The plaintiffs also seek "post-judgment" interest, and a writ of garnishment. The Court heard oral argument on the motions on December 7, 2006. The Court now finds that none of the arbitrators was laboring under a conflict of interest, displayed evident partiality, engaged in misconduct or other misbehavior, or exceeded his powers. Therefore, the Court will deny the defendants' motion to vacate the arbitral award, and the Court will confirm the award and award post-award interest. The Court will deny the request for a writ of garnishment at this time because the plaintiffs have not obtained a judgment or followed the other procedures required by Michigan Court Rule 3.101(D), made applicable by Federal Rule of Civil Procedure 69(a).

I.

The case arises from the personal injuries and eventual death of Lynn Uhl, who worked as a forklift driver at Means Industry located in Vassar, Michigan. On December 17, 2001, while Uhl was on the job, the mast failed on the forklift he was operating; the mast fell on and crushed him. Uhl survived the accident but ultimately expired from his injuries about fourteen months after the accident.

On June 21, 2004, Donna Uhl instituted this wrongful death action, asserting claims for products liability, negligence, and breach of the implied warranty of merchantability. She is represented by attorney David R. Skinner. On September 16, 2004, the parties stipulated to the entry of an order allowing Pacific Employers Insurance Company to intervene as a plaintiff in this matter. Pacific Employers, represented by its own attorney, Roy W. Johnson, sought to recover the cost of the worker's compensation benefits it had paid to the plaintiff and the decedent.

Following the entry of a scheduling order and a period of discovery, counsel for the parties informed the Court that they had reached an agreement to submit the case to binding arbitration. They filed a stipulation to that effect, and on November 14, 2005 the Court entered an order dismissing the case while retaining jurisdiction to review and enforce the arbitral award. The trial scheduled for November 29, 2005 was cancelled, and the parties were directed to complete the arbitration on or before January 31, 2006.

No arbitration occurred within that time frame, however, because the defendants refused to sign an agreement setting forth the arbitration ground rules. On March 30, 2006, the plaintiff filed a motion to compel the defendants to execute the arbitration agreement. The defendants responded in opposition to the motion, and the Court held a hearing on May 16, 2006. At the hearing, the Court concluded that it could not compel the defendants to arbitrate the case absent their consent, despite their prior representations, and the Court declined to compel the signing of the document. However, the Court set aside the dismissal order and restored the case to the active docket. Trial was scheduled for September 12, 2006.

On May 26, 2006, the parties filed another stipulated to send this matter to binding arbitration. This time, the document set forth the arbitration procedure to which the parties would agree. However, the stipulation did not contain a deadline for completing arbitration, and the Court did not order the matter dismissed or cancel the trial date. Then, on August 29, 2006, the parties filed a stipulation to dismiss the case in which they represented that the arbitration was completed on August 18, 2006, although the parties were awaiting the arbitral award. On August 30, 2006, the Court entered an order of dismissal pursuant to the parties' stipulation, which stated:

> In light of the parties' stipulation, the Court will dismiss the case with prejudice subject, however, to the specific conditions described below.
>
> Accordingly, it is **ORDERED** that the matter is **DISMISSED WITH PREJUDICE**. It is further **ORDERED** that either party may apply to the Court to reopen the matter for the purpose of enforcing, confirming, or vacating, as appropriate, the arbitral award.
>
> It is further **ORDERED** that this Court shall retain jurisdiction to review and enforce or vacate the arbitral award.

Order of Dismissal [dkt # 66] at 1–2.

On September 22, 2006, the plaintiff and intervening plaintiff filed the present motion to enforce the arbitration award, alleging that the arbitration hearing lasted for three days, from August 16 through August 18, 2006, and the arbitration panel rendered an award in favor of the plaintiffs in the amount of $1.9 million on September 12, 2006. On September 27, 2006, the defendants filed their motion to reopen the case and vacate the arbitration award, or, in the alternative, to secure additional time for discovery. The plaintiff and intervening plaintiff filed an answer in opposition.

The arbitration agreement at issue in this case contains the following relevant provisions:

1. *Selection of Arbitrators.* The Arbitrators shall be selected as follows: Both Plaintiffs and Defendants shall select one Arbitrator each ("party-selected arbitrator(s)["] ). Each party-selected arbitrator shall be a practicing attorney possessing experience in judicial litigation, a substantial portion of which experience shall involve product liability matters. The two party-selected arbitrators shall then choose a third neutral arbitrator, who shall chair the Panel's proceedings . . . .

2. *Ethical Requirements.* The Arbitrators shall have no financial or personal interest in the result of this Arbitration. Prior to selecting the neutral arbitrator, the party-selected arbitrators shall disclose to all parties any referral agreements, financial dealings, or other relationships with any of the parties or parties' attorneys that could in any way be construed as a possible conflict of interest. After such disclosure, either party may demand that the conflicted arbitrator recuse him/herself, and a new arbitrator will be selected by the party who originally selected the recused arbitrator. The newly selected arbitrator is subject to the same ethical terms and procedures contained in this paragraph.

.    .    .    .    .

7. *Final Decision.* The arbitrators shall be the sole judges of all issues of law and fact. There can be no appeal from any decision made by the arbitrators except a claim of fraud or that the arbitrators, parties or their attorneys violated one of the provisions of this Agreement.

.    .    .    .    .

36. *Jurisdiction.* The Northern Division, Eastern District of Michigan, the Honorable David M. Lawson shall ... retain jurisdiction of this matter for the purpose of resolving any disputes regarding scheduling of the arbitration, for enforcement of any subpoenas to compel attendance at the hearing as well as for enforcing any award entered by the Arbitrators.

Mot. to Vacate, Ex. A, Arbitration Agreement at ¶¶ 1–2, 7, 36. The defendants argue for vacatur on the grounds that one of the arbitrators, Martin Stein, had a long-lasting financial relationship with counsel for the intervening plaintiff, Roy Johnson, which he failed to disclose in contravention of the arbitration agreement. The defendants contend that because of the relationship, Mr. Stein had a conflict of interest, showed evident bias in favor of the plaintiff, and breached the arbitration agreement's disclosure requirement. In support of this argument, the defendants have submitted a number of court records that show previous professional contact between Johnson and Stein.

First, the defendants have submitted selected pleadings and court documents from *Wegner v. Contech Construction Products, Inc.,* a case that appears to have proceeded in the Macomb County Circuit Court from March 1996 to July 1999, in which Martin Stein served as plaintiff's counsel in a products liability action and Roy Johnson represented the plaintiff's employer as intervening plaintiff. The employer sought to recover its worker's compensation payments from the tortfeasor. The documents show that an arbitration panel ultimately found in favor of the plaintiff in the amount of $70,000, but they do not show any sort of financial arrangement between Martin Stein and Roy Johnson.

Next, the defendants have submitted pleadings from *Johnson v. A & M Custom*

*Built Homes, Inc.,* a 2001 action in the Oakland County Circuit Court, in which Martin Stein served as counsel for the plaintiff and Roy Johnson served as counsel for the intervening plaintiff. Once again, the intervening plaintiff was a worker's compensation fund that had made substantial payments to the plaintiff resulting from the alleged wrongful acts of the defendants. There is no documentation suggesting a financial arrangement between Stein and Johnson.

The defendants also submitted selected pleadings from *Perreca v. Central Metal Products, Inc.,* a case that proceeded in the Macomb County Circuit Court from 1999 to 2001. The plaintiff in that case was jointly represented by Martin Stein and Roy Johnson, and he sued his employer for injuries sustained on the job. The submissions indicate that an attorney from Bowman and Brooke LLP, the law firm representing the defendants in the present matter, served as defense counsel in the *Perraca* case prior to a substitution of counsel. The lawsuit was dismissed by stipulation, presumably after the parties reached a settlement.

The defendants also have supplied a number of docket-sheet printouts from the this Court and the United States District Court for the Western District of Michigan that show that in four cases, Martin Stein represented a personal injury plaintiff and Roy Johnson represented a worker's compensation carrier as intervening plaintiff. The first case is from 1994, the second proceeded in 1996 and 1997, the third printout is a 1994 case, and the fourth is from a case that was pending from 1996 to 1998. Another printout from a case that proceeded in 1995 and 1996, *Shelton v. Verson,* shows that Stein and Johnson jointly represented the personal-injury plaintiffs.

In response to the defendants' motion to vacate the arbitration award, the plaintiffs argue that none of the defendant's submissions warrants a conclusion of conflict of interest or bias on Martin Stein's part. In the two cases in which Johnson and Stein acted as co-counsel for a personal injury plaintiff no referral fees were exchanged. Johnson states that in *Perraca,* neither he nor his firm received a referral fee, he received no attorney fee himself, and because no third-party action existed a first-party worker's compensation claim was filed on behalf of the plaintiff. Moreover, he says that defense counsel was aware of the joint representation because Bowman and Brooke LLP defended this matter. In *Shelton,* a 1995 case, no attorney fee was recovered because summary judgment was granted for the opposing party. In addition, the intervening plaintiff states that defense counsel knew well before the arbitration commenced that Johnson and Stein had been involved in cases together in the past. To prove this, the plaintiffs have submitted the affidavit of Peter Barroso, Jr., an individual who was deposed in the present matter, who avers that before his deposition on December 16, 2005, Fred Fresard, one of the present defendants' attorneys, said to Roy Johnson "that he was aware Mr. Johnson chose Marty Stein as his arbitrator and he further mentioned that he understood Marty Stein had done other cases with him and his firm in the past." Resp. Brf., Ex. A, Aff. of Barroso at ¶ 4. Barroso also recalls "that Mr. Johnson responded that he had had prior cases with Mr. Stein" and that "Mr. Fresard then affirmatively nodded his head and said alright." *Id.* at ¶¶ 5–6. Fred Fresard has filed an affidavit confirming that the conversation occurred, but he recalled speaking with Johnson off the record prior to the Barroso deposition and Johnson "advising me that he had represented the intervening plaintiff in one or two cases in

which Martin Stein represented the plaintiff." Reply Brf., Ex. L, Aff. of Fresard at ¶¶ 5–6.

The plaintiff and intervening plaintiff contend that they are entitled to enforce the arbitral award. They request entry of a judgment and seek the issuance of a writ of garnishment. They also request an award of "post-judgment" interest on the amount of the arbitral award.

## II.

"The Federal Arbitration Act ('FAA') expresses a presumption that arbitration awards will be confirmed." *Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir.2005) (citing 9 U.S.C. § 9). Review of an arbitrator's award is governed by "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer–Stevens Co. v. United Steelworkers of Am.*, 913 F.2d 1166, 1169 (6th Cir.1990); *see also Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir.1997) (observing that "[t]he Supreme Court has made clear ... that courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed"). Under the FAA, 9 U.S.C § 1 *et seq.*, a district court with appropriate jurisdiction "must enforce an award if 'the arbitrator's award draws its essence from the ... agreement, and is not merely his own brand of industrial justice.'" *Jacada (Europe), Ltd. v. Inter'l Marketing Strategies, Inc.*, 401 F.3d 701, 712 (6th Cir.2005) (quoting *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Section 9 of the FAA states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made

pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Consequently, the Court must grant the plaintiff's and intervening plaintiff's motion to confirm and enforce the arbitral award unless there are valid grounds for vacating it under the narrow standards set out in the FAA.

### A.

Section 10(a) of the FAA sets forth the grounds upon which an arbitral award may be vacated. It states:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award

upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

■ The defendants contend that the arbitral award must be vacated because arbitrator Stein has a conflict of interest arising from his past dealings with counsel for the intervening plaintiff, and the failure to disclose those past dealings resulted in an award procured by fraud, the relationship shows evident partiality by arbitrator Stein toward the plaintiff, the non-disclosure amounted to misbehavior that prejudiced the defendants, and arbitrator Stein exceeded his powers by failing to disclose a prior business relationship with counsel for the intervening plaintiff. Certainly these arguments fit within the grounds set forth in section 10(a); however, the evidence proffered by the defendants establishes none of these things.

All that the defendant has demonstrated is the rather pedestrian proposition that Johnson and Stein appeared in the same lawsuits together on several occasions representing different parties, and on two occasions they jointly (and apparently unsuccessfully) represented a personal injury plaintiff. Mr. Johnson apparently is in the business of representing worker's compensation carriers attempting to recover from third-party tortfeasors compensation payments made to injured workers in industrial accidents. In such cases, the worker's compensation carrier may enforce a statutory lien against the third-party tort recovery. *See* Mich. Comp. Laws § 418.827. The interests of the injured worker and his worker's compensation carrier in such lawsuits are both cooperative and antagonistic. Of course, both parties work together to establish fault on the part of the tortfeasor. But then interests diverge when damages must be apportioned. To say that attorneys who represent these diverse interests have a "business relationship"

misapprehends the nature of such litigation and the independent roles the respective attorneys must play. Moreover, it is not unusual that attorneys Stein and Johnson would appear together with some degree of frequency in such cases. The arbitration agreement in this case required the arbitrators to be "practicing attorney[s] possessing experience in judicial litigation, a substantial portion of which experience shall involve product liability matters." Mot. to Vacate, Ex. A, Arbitration Agreement at ¶ 1. Stein apparently qualified as having substantial experience as a products liability lawyer. Given Stein's and Johnson's areas of concentration, it is reasonable to anticipate that their paths would cross frequently.

In *Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Service,* 335 F.3d 497 (6th Cir.2003), the Sixth Circuit described the following test for vacatur of an arbitral award on the grounds of fraud:

> To merit the vacation of the arbitration award, [the movant] must demonstrate (1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration.

*Id.* at 503. The defendants contend that the issue upon which there was a fraudulent concealment by arbitrator Stein related to the disclosure requirement of the arbitration agreement. As noted above the agreement stated that "the party-selected arbitrators shall disclose to all parties any referral agreements, financial dealings, or other relationships with any of the parties or parties' attorneys that could in any way be construed as a possible conflict of interest." Mot. to Vacate, Ex. A, Arbitration Agreement at ¶ 2. However, no reasonable person could view Stein's and Johnson's prior professional dealings

as creating a conflict of interest. There is no evidence that Stein had prior knowledge of the plaintiff, a relationship with the worker's compensation carrier, an interest in the outcome of the arbitration, or a business relationship with attorney Johnson from which he would derive a financial benefit. Even if the past instances of appearing as co-counsel with Johnson can be construed as a prior partnership or joint venture, the relationship was so attenuated by the passage of time as to be insignificant. Under Michigan law, even trial judges may preside in cases involving members of their former law firms after the lapse of two years. *See* Mich. Ct. R. 2.003(B)(4). The defendants' submissions fall far short of "clear and convincing evidence of fraud." Nor did any of the past encounters between Johnson and Stein amount to a circumstance that required disclosure under paragraph 2 of the arbitration agreement.

Moreover, counsel for the defendants had actual knowledge of at least some of the prior professional contacts between arbitrator Stein and attorney Johnson. That same defense law firm appeared in opposition to the pair in one of their prior joint representation cases, and attorney Fresard acknowledged that Johnson told him in December 2005 that he and Stein had been involved in other lawsuits representing plaintiffs and intervening plaintiffs, respectively. The defendants' evidence shows that the most recent such event occurred four years earlier in 2001. Since defense counsel knew about the event well before the arbitration hearing, the defendants have failed to demonstrate why defense counsel's exercise of due diligence prior to the arbitration would not have uncovered the relationship of which they now complain. Defense counsel were on notice of Johnson and Stein's relationship since December 16, 2005, yet they waited until September 2006, after an unfavorable

award had been announced, to investigate the precise nature of this relationship. The defendants joined in a stipulation to dismiss this case that was presented *after* the arbitration hearing, suggesting that nothing about arbitrator Stein's behavior at the hearing caused the defendants to question his impartiality. Because the evidence put forth does not amount to fraud, a conflict of interest, or "undue means," and exercise of due diligence would have revealed the facts of which the defendants now complain, the defendants are not entitled to vacatur under 9 U.S.C. § 10(a)(1). *Int'l Brotherhood of Teamsters, Local 519*, 335 F.3d at 503.

To prove "evident partiality" as a ground of vacating an arbitral award, the challenging party must show more than the appearance of bias. *Nationwide Mutual*, 429 F.3d at 644–45. "Evident partiality" exists only when "a reasonable person would have to conclude that the arbitrator was partial to one party to the arbitration." *Id.* at 647. " 'The alleged partiality must be direct, definite, and capable of demonstration, and "the party asserting [it] ... must establish specific facts that indicate improper motives on the part of the arbitrator." ' " *Id.* at 645 (quoting *Andersons, Inc.*, 166 F.3d at 329). Applying that test in *Nationwide Mutual*, the court of appeals held that evidence that an arbitrator who had served as a party-selected arbitrator for the defendant in the past, and even represented a subsidiary of the defendant as counsel, was insufficient to prove "evident partiality" of the arbitrator in that case. The court stated:

> These facts would not, in our opinion, lead a reasonable person to conclude that Jacks was partial to one side of the arbitration.... Nationwide otherwise has failed to show with specificity how the substance of these disclosures per-

taining to [the arbitrator]'s continued service in the reinsurance industry, and his prior and ongoing contacts with Home and ACE/CIGNA in numerous unrelated matters, manifest evident partiality pursuant to 9 U.S.C. § 10(a)(2) and are "powerfully suggestive of bias" in the present matter.

*Id.* at 648–49. In addition, as with cases of fraud, claims of evident partiality may be waived through a party's failure to timely object to the arbitration on such grounds. *See Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358–59 (6th Cir.1989) (holding that "a grievant must object to an arbitrator's partiality at the arbitration hearing before such an objection will be considered by the federal courts"). The defendants seek to distinguish *Apperson* on the ground that arbitrator Stein failed to disclose required information, and therefore the defendants were not aware of sufficient facts to formulate their objections. That argument must fail, however, because, as this Court has stated, Stein had no relationship with attorney Johnson that could be construed as causing a conflict of interest, and, as noted above, counsel for the defendants had actual knowledge of some of the prior professional contacts between the two.

The defendants argue as well that in cases of nondisclosure, the appropriate standard for vacatur is proof of a "reasonable impression of partiality." *See Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir.1994). The Court does not find that standard applicable because it determines that there was no obligation on Stein's part to make the disclosures suggested by the defendants under the plain language of the arbitration agreement. Moreover, the defendants had knowledge of prior professional contacts between Stein and Johnson.

The defendants' claim that there was "evident partiality" on the part of arbitrator Stein, therefore, fails for two reasons. First, the defendants have waived the objection because they waited until after the arbitration award was issued to raise their claim of evident partiality. Second, it is clear that the facts do not support a finding of evident partiality on the part of arbitrator Stein. As noted earlier, the prior professional relationship between Stein and Johnson does not show that Stein was biased toward the plaintiff or the intervening plaintiff or sought to sway the result of the case irrespective of the evidence presented at the arbitration hearing. The evidence that the defendants have submitted does not give rise to even a suspicion of a continuing relationship between Johnson and Stein, not does it raise the suggestion of a conflict of interest that was concealed. There is no basis to infer evident partiality; *a fortiori*, these circumstances are not "powerfully suggestive of bias," and a reasonable person would not conclude that arbitrator Stein was partial to one party to the arbitration. *Nationwide*, 429 F.3d at 649 (internal quotation marks omitted). Nor do the defendants' claims rise to the level of a reasonable impression of partiality.

The grounds for vacating an arbitral award set out in 9 U.S.C. § 10(a)(3) deal primarily with situations where the procedures used by the arbitration panel are fundamentally unfair. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 624–25 (6th Cir.2002) (finding no prejudicial misconduct on part of arbitration panel where panel did not allow discovery on nonmeritorious issue of entitlement to costs). The Sixth Circuit has noted that " '[a]rbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration proceedings is merely whether a party to arbitration has been denied a fundamentally fair hearing.' " *Id.* at 625 (quoting *Na-*

*tional Post Office v. U.S. Postal Serv.,* 751 F.2d 834, 841 (6th Cir.1985)). The defendants have alleged no irregularity that would subject the arbitral award to challenge under this subsection. Certainly, an arbitration hearing conducted by an arbitrator who was biased or corrupt could be fundamentally unfair, but other sections of the statute deal with those defects. The Court finds that the defendants have not established a right to relief under section 10(a)(3) of the FAA.

■ Finally, the defendants contend that arbitrator Stein exceeded his authority by failing to disclose his past contacts with attorney Johnson in violation of the arbitration agreement, warranting relief under 9 U.S.C. § 10(a)(4). The Sixth Circuit recently provided a gloss on this subsection in *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.,* 442 F.3d 471 (6th Cir.2006):

> The burden of proving that the arbitrators exceeded their authority is very great ... and courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed.... The terms of the contract define the powers of the arbitrator, and as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision.... Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious *legal* or factual error.... And if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.

*Id.* at 476 (internal quotes, alterations, and citations omitted). An arbitral award is valid if it "draws its essence from the agreement." *Ibid.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). The Sixth Circuit has identified four ways by which an arbitrator may stray from the "essence" of the collective bargaining agreement: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Eisenmann Corp. v. Sheet Metal Workers Intern. Ass'n Local No. 24, AFL–CIO,* 323 F.3d 375, 380 (6th Cir.2003) (internal quotes omitted). The court of appeals has noted that an arbitrator who does not adhere to a procedural requirement of an arbitration agreement, such as failing to give a decision in writing when the agreement expressly provides, may subject an award to a challenge under this subsection. *See Green v. Ameritech Corp.,* 200 F.3d 967, 972 n. 3 (6th Cir.2000); *see also Western Employers Ins. Co. v. Jefferies & Co., Inc.,* 958 F.2d 258, 262 (9th Cir.1993) (recognizing that "we have traditionally vacated arbitration awards under this provision where the arbitrators somehow alter the *parties'* contractual obligations," but explaining that "arbitrators can also 'exceed their powers' under 9 U.S.C. § 10(d) [now 9 U.S.C. § 10(a)(4)] when they fail to meet *their* obligations, as specified in a given contract, to the parties"). In addition, the Seventh Circuit has stated in *dictum* that the failure to disclose background information by a neutral arbitrator might give rise to an award challenge under section 10(a)(4):

> A potential neutral [arbitrator] may have contractual obligations to reveal in-

formation to those who select him. Failure to comply with a contractual requirement designed to facilitate the search for an acceptable neutral might imply that the neutral exceeded his authority, spoiling the award under 9 U.S.C. § 10(a)(4).

*Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, 307 F.3d 617, 623 (7th Cir. 2002).

The Court finds, however, that the defendants' challenge under this subsection is not well taken because arbitrator Stein did not violate paragraph 2 of the arbitration agreement when he did not come forward to reveal his past litigation encounters with attorney Johnson. Paragraph 2 created a disclosure obligation for arbitrators who had prior relationships "that could in any way be construed as a possible conflict of interest." Mot. to Vacate, Ex. A, Arbitration Agreement at ¶ 2. For reasons explained earlier, none of the information furnished to date by the defendants demonstrates such a relationship involving arbitrator Stein. There has been no evidence presented to suggest that Stein had a stake in the outcome of the arbitration or that he had any current financial relationship with Johnson or any of the parties. There is no evidence that Stein had anything to gain or lose by his decision in this case.

The Court concludes that the defendants have failed to demonstrate any valid ground for vacating the arbitration award.

## B.

The defendants' alternate request is for a period of discovery to develop grounds to attack the arbitral award. At oral argument on the motion, counsel for the defendants explained that he wanted to explore the rationale behind arbitrator Stein's decision to determine if some sort of allowance was made in the present case

in consideration of his previous unsuccessful efforts at recovering for two other plaintiffs with Mr. Johnson. Counsel also argued that the existence of past professional associations could imply a current financial arrangement between Stein and Johnson that could be explored through discovery.

It has been observed that the "deposition of arbitrators [is] 'repeatedly condemned' by courts." *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 68 (2d Cir.2003) (quoting *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 430 (9th Cir.1996)); *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 430 (9th Cir.1996); *O.R. Securities, Inc. v. Professional Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir.1988). In the rare instances, such depositions are allowed only " 'where clear evidence of impropriety has been presented.' " *Woods*, 78 F.3d at 430 (citing *Andros Compania Maritima ex rel. Marc Rich & Co.*, 579 F.2d 691, 702 (2d Cir.1978)). Even in those instances, "cases are legion in which courts have refused to permit parties to depose arbitrators—or other judicial or quasi-judicial decision-makers—regarding the thought processes underlying their decisions." *Hoeft*, 343 F.3d at 67 (collecting cases).

When analyzing the premise of the defendants' request for discovery, one must conclude that it rests solely on speculation. The arbitral award states that it resulted from a two-to-one decision by the arbitration panel, but the identity of the dissenter is not disclosed. There is no basis to conclude that Stein necessarily voted for the plaintiff and intervening plaintiff; given the potential damages and the ultimate award, one might conclude just as easily that Stein dissented from the amount of the award. Nor have the defendants pointed to any objective evidence in the record that suggests a demonstration of actual bias or misconduct by Stein at the

arbitration hearing, or that his decision (whatever it was) was based on anything other than the evidence. The defendants have not brought forth clear evidence of impropriety. The Court concludes, therefore, that the defendants have failed to make the required showing to justify the period of discovery they seek.

## C.

Having determined that there is no valid basis to vacate the arbitral award, the Court finds that the plaintiff and intervening plaintiff are entitled to an order confirming the award. 9 U.S.C. § 9. They also seek entry of a judgment in their favor pursuant to Federal Rule of Civil Procedure 58(d), the issuance of a writ of garnishment pursuant to Federal Rule of Civil Procedure 69 and Michigan Court Rules 3.101(B), and entry of an order for post-judgment interest.

■ An arbitral award fixes the rights and obligations of the parties who have submitted their dispute to arbitration, and although the award itself is not a judgment, "the rights of the parties are determined from the date of the award and not the date of the court's judgment confirming the award." *Marion Mfg. Co. v. Long,* 588 F.2d 538, 541 (6th Cir.1978). Once an award is confirmed, a proper judgment should enter, and the Court finds that the plaintiffs are entitled to that relief in this case.

On the question of awarding interest, this Court has held that "when a judgment confirming an arbitration award is entered, the prevailing party is entitled to interest from the date of filing the complaint to the date of judgment measured at the variable rate set forth in Mich. Comp. Laws § 600.6013, and interest after judgment is payable at that rate until judgment is satisfied." *R.D. Management Corp. v. Philadelphia Indem. Ins.,* 302 F.Supp.2d 728,

732 (E.D.Mich.2004). However, *R.D. Management* dealt with a common law arbitration in which the arbitrators did not have the authority to award prejudgment interest as an element of damages. The present case involves statutory arbitration because the arbitration agreement provided for judicial enforcement of the arbitral award. *Id.* at 734. Because of the broad authority granted to the arbitrators, which is construed as including the authority to award prejudgment as an element of damages, the "court[ ] may not set aside an award of interest ... nor may courts supplement an award that is silent on the element of interest, since it is presumed that arbitrators considered interest as an element of damages and rejected it." *Id.* at 733 (citing *Old Orchard by the Bay Associates v. Hamilton Mut. Ins. Co.,* 434 Mich. 244, 454 N.W.2d 73 (1990), and *Holloway Const. Co. v. Oakland County Bd. of Road Comm'rs.,* 450 Mich. 608, 617, 543 N.W.2d 923, 927 (1996)). Therefore, the plaintiff and intervening plaintiff are entitled only to interest at the statutory variable rate from the date of the arbitration award, which is the date on which the rights of the parties were determined. *Marion Mfg. Co.,* 588 F.2d at 541.

■ Once judgment has been entered in favor of a party, Federal Rule of Civil Procedure 69(a) governs execution upon that judgment. That Rule provides that "[t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held." Fed. R. Civ. Pro. 69(a). The plaintiffs contend that they are entitled to a writ of garnishment against the defendants' insurers under this rule.

The applicable provision in such circumstances is found in Michigan Court Rule 3.101(D), which states:

The clerk of the court that entered the judgment shall issue a writ of garnishment if the plaintiff, or someone on the plaintiff's behalf, makes and files a statement verified in the manner provided in MCR 2.114(A) stating:

(1) that a judgment has been entered against the defendant and remains unpaid;

(2) the amount of the judgment and the amount remaining unpaid;

(3) that the person signing the verified statement knows or has good reason to believe that

(a) a named person has control of property belonging to the defendant,

(b) a named person is indebted to the defendant,

(c) a named person is obligated to make periodic payments to the defendant.

Mich. Ct. R. 3.101(D). By its terms, the rule requires that a judgment has entered and the judgment creditor has filed a verified application containing certain allegations. The plaintiffs have fulfilled neither of those conditions in this case. They are not entitled to a writ of garnishment at this time.

### III.

The Court finds that there are no valid grounds upon which to vacate the arbitral award, the award ought to be confirmed, the plaintiff and intervening plaintiff are entitled to interest from the date of the award, and neither of them are entitled to a writ of garnishment at the present time.

Accordingly, it is **ORDERED** that the plaintiff's and intervening plaintiff's motion to enforce the arbitral award [dkt # 68] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the arbitral award dated September 12, 2006 in the amount of $1.9 million is **CONFIRMED** and judgment shall enter accordingly.

It is further **ORDERED** that the plaintiff and intervening plaintiff shall recover interest at the rate set forth in Michigan Compiled Laws section 600.6013 from and after September 12, 2006 until the judgment is satisfied.

It is further **ORDERED** that the defendants' motion to vacate the arbitral award [dkt # 70] is **DENIED.**

It is further **ORDERED** that the plaintiff's and intervening plaintiff's request for a writ of garnishment is **DENIED WITHOUT PREJUDICE.**